**Lawrence KAPLAN, Appellant,**

v.

**Colleen O'KANE, Appellee.**

Superior Court of Pennsylvania.

Argued July 29, 2003.

Filed Oct. 28, 2003.

Leonard P. Haberman, Philadelphia, for appellant.

Michael J. Phillips, Philadelphia, for appellee.

BEFORE: STEVENS and KLEIN, JJ., and McEWEN, P.J.E.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment entered in the Court of Common Pleas of Philadelphia County in favor of Appellee Colleen O'Kane following a jury's verdict that Appellant Laurence Kaplan did not suffer a serious impairment of bodily function as a result of a motor vehicle accident occurring on October 24, 1992. On appeal, Appellant contends (1) the trial court should have granted Appellant's post-trial motion for a new trial on the basis that Appellee's counsel intentionally informed the jury that Appellant was subject to limited tort, and (2) the trial court erred in denying Appellant's request for a continuance so that Appellant could have more fully presented his damages. We affirm.

¶ 2 The relevant facts and procedural history are as follows: On October 24, 1992, Appellant, Appellee, and Wael Ali, all of whom were operating motor vehicles at the time, were involved in an accident in Philadelphia, Pennsylvania. On August 5, 1994, Appellant filed a complaint alleging that Appellee and Ali were negligent with regard to the operation of their vehicles. On September 6, 1994, Appellee filed an answer with new matter and cross-claims, asserting that Appellant and Ali were jointly and/or individually negligent with regard to the operation of their vehicles and that Appellee was not negligent. On January 31, 1995, Ali filed an answer with new matter contending that Appellant and Appellee were jointly and/or individually negligent and that he was not negligent. Appellant filed answers to Appellee's and Ali's answers with new matter.

¶ 3 On December 19, 1997, the matter proceeded to arbitration, and judgment was entered in favor of Appellee and Ali because Appellant failed to appear. Appellant filed an appeal from the arbitrators' award, and the trial court dismissed the appeal, remanding the matter for further arbitration. On June 29, 1998, the arbitrators found in favor of Appellant and against Appellee and Ali on the question of liability and awarded Appellant $20,000.00. The arbitrators concluded that Appellant was bound by a limited tort as to Appellee, resulting in Appellee not being liable for any damages, but that the limited tort did not apply as to Ali.[1] Appellant filed an appeal to the trial court.

---

1. Appellee resided in Pennsylvania but Ali resided in New Jersey at the time of the accident.

¶4 On November 16, 1999, the trial court dismissed the appeal because Appellant failed to appear for a mandatory pretrial settlement conference. Appellant filed a petition to reinstate his appeal/open judgment of *non pros*, which was denied, and Appellant filed an appeal. By memorandum filed on April 20, 2001, a panel of this Court reversed the trial court, reinstated Appellant's appeal to the trial court, and remanded for further proceedings. *Kaplan v. O'Kane and Ali*, No. 581 EDA 2000, 778 A.2d 742 (Pa.Super. filed April 20, 2001) (unpublished memorandum).

¶5 The matter proceeded to a jury trial, during which Ali and Appellant entered into a settlement agreement, thereby fully releasing Ali. At the conclusion of the jury trial, the jury returned a verdict on November 30, 2001, concluding that Appellant did not suffer a serious impairment of bodily function as a result of the 1992 accident. Consequently, the jury awarded no damages and made no decision as to whether Appellee was negligent. On December 10, 2001, Appellant filed a post-trial motion requesting a new trial on the basis that Appellee's counsel improperly indicated that Appellant was bound by a limited tort and the trial court erred in failing to grant Appellant's request for a continuance. By order filed on February 7, 2002, the trial court denied Appellant's post-trial motion and entered judgment in favor of Appellee. This timely appeal followed. On March 15, 2002, the trial court ordered Appellant to file a concise statement pursuant to Pa.R.A.P. 1925(b), and the prothonotary mailed copies of the order to Appellant's trial attorney on that same day. Appellant filed the requested Pa.R.A.P. 1925(b) statement, and the trial court filed a Pa.R.A.P. 1925(a) opinion.

■ ¶6 "Our standard of review regarding a trial court's denial of a motion for a new trial is limited. The power to grant a new trial lies inherently with the trial court and we will not reverse its decision absent a clear abuse of discretion or an error of law which controls the outcome of the case." *Siegal v. Stefanyszyn, M.D.*, 718 A.2d 1274, 1275 (Pa.Super.1998) (citation omitted).

■ ¶7 Appellant first contends that the trial court erred in denying his post-trial motion for a new trial on the basis that Appellee's counsel intentionally informed the jury that Appellant was subject to a limited tort. In its opinion, the trial court indicated that Appellant did not properly preserve his request for a new trial because Appellant's counsel failed to request a mistrial, and in any event, Appellant was not prejudiced by counsel's statement. We conclude that Appellant has waived his request for a new trial.

¶8 Prior to *voir dire*, Appellee's attorney indicated that, while selecting the jury, he wished to inquire as to whether potential jurors knew the meaning of limited tort. N.T. 11/26/01 at 5–7. In response, Appellant's attorney argued that jurors were not permitted to know that a plaintiff has selected limited tort, and, therefore, it would be improper for Appellee's attorney to question potential jurors regarding limited tort. N.T. 11/26/01 at 8–10. The trial court denied Appellee's attorney's request and indicated that the defense was not to mention limited tort to the jury. N.T. 11/26/01 at 12. However, during trial, on cross-examination of Appellant, the following exchange occurred:

**Appellee's Attorney:** [Appellant], there's a stipulation in this case that you are subject to limited tort.

You understand that right?

**Appellant's Attorney:** Objection.

**The Court:** I already sustained that.

**Appellee's Attorney:** Your Honor, there's in fact a stipulation, right?

The Court: First of all,...there's been no stipulation told to this jury at any time at anywhere, and before anyone mentions whether there is or is not a stipulation in the case they better check with me first.

Second, I heard what you said and the plaintiff's objection is sustained.

Please ask another question.

Appellant's Attorney: We have been through that, Your Honor.

The Court: What are you doing?

Appellee's Attorney: Can we have a side-bar, Your Honor?

The Court: No. Ask your next question.[2]

N.T. 11/27/01 at 171–172 (emphasis added).

¶ 9 After the jury was dismissed at the end of the day, the following transpired in open court out of the presence of the jury:

The Court: [Appellee's counsel], you will have to refresh my memory as to whether during the entire course of this proceedings that it was ever intimated that limited tort was going to be a term used to this jury.

Appellee's Attorney: Your Honor, I didn't know that it wasn't going to be a term. I know that we discussed—

The Court: First of all, the first discussion that came up was when you were saying may I ask questions during the *voir dire* and I said absolutely not because we are not going to discuss limited tort.

If we were going to discuss limited tort at trial, then I probably would have said okay, you can ask *voir dire* questions on limited tort.

The reason I gave for not asking questions on limited tort among *voir dire* is because it was not going to be mentioned. The second time it was not—well, not explicitly overwhelmingly, implicitly discussed was during the verdict sheet when we talked about it.

And we said we are going to leave the one question in there. We are not going to ask for separate damages. We are just going to do the verdict sheet the way that you prepared it and none of that implies anything is going to happen about limited tort.

So, it's just, I really, it is escaping me whenever we even intimated that we are going to use the term limited tort in front of the jury.

Appellee's Attorney: Your Honor, I'll answer this way. The discussions regarding the *voir dire* of the jury weren't about the use, at least the question I brought up there and what I said was I wanted to talk to them about the meaning of the law and whether they would be able to follow the law.

The question was never raised in the court whether it's proper or not.

The Court: I said you can't do it.

Appellee's Attorney: And what I interpreted that to mean was don't discuss the meaning of the term....

The Court: I certainly thought I made it clear during our initial proceedings that we weren't going to use the term.

Appellee's Attorney: Your Honor, the reason I mentioned it is because I know that we had discussed this before, but I didn't see if the court reporter was taking down that everybody stipulated to it...

But, I do have to make a record that there is a higher standard that the Court has explained. In other words, if it doesn't come up in evidence, then plaintiff's counsel can get it in the case

---

**2.** Appellee's attorney then resumed questioning on unrelated issues.

and there's no way to prove that limited tort—

**Appellant's Attorney:** I would never make that inference—

**The Court:** Please, there was never any mention that anyone would ever say it. . . .

So, anyhow, what do you want to bring up about limited tort in questioning of this witness for?

**Appellee's Attorney:** I just wanted to establish limited tort so I could guarantee that the issue would go to the jury.

\* \* \*

**Appellant's Attorney:** Your Honor, may I make a request? **I'm not going to request a mistrial on the issue, but I think in all fairness, Your Honor, regardless of the reason why it was done, it got out.** It did. And if somebody knows about limited tort, they can spread to the whole jury what this means and it can really affect the deliberations.

**The Court:** What if they know what it means? What does it mean?

**Appellant's Attorney:** Because somebody on the jury can say oh, well, he paid less for his insurance and that's my only question at this time.

**The Court:** Then they will say that's why we are being asked question number one.

**Appellant's Attorney: My only request at this time is not a mistrial. I'm not going to go that far.**

I ask that as a way to make the game fair, Your Honor. That's all the issue earlier that we talked, about loss of life's pleasure and [he] wanted to become a police officer.

I was going to do research and so forth. I think that in light of the fact that a juror certainly—well, they all

heard it—but to the extent that it's going to impair our case, maybe this is a nice compromise to bring the level playing field back again, that now maybe you can just agree that they can be charged to the extent that they feel he can't become a cop and so forth. That the fact that he can't be a police officer is harm because he always wanted to become a police officer, that's a way to make it fair.

**The Court:** I don't understand what you are saying.

**Appellant's Attorney:** In other words, Your Honor wanted me to do some research as to whether or not we should get a charge.

**The Court:** I understand that, but I don't understand your proposed solution.

**Appellant's Attorney:** Just as a way to make it fair because they did hear the term limited tort. He got it out before you instructed him.

**The Court:** I understand.

**Appellant's Attorney:** So the harm has been done.

**The Court:** Because one party may have disregarded an appropriate argument in one sense, I'm not going to then say here's another inappropriate argument that I'm now going to make appropriate. I'm not going to do that.

Is there any other?

**Appellant's Attorney:** I can do research on the issue. Still you haven't made a ruling on that yet.

**The Court:** I have not made a firm ruling on it. I have talked to . . . two other judges and they share my skepticism.

**Appellant's Attorney:** Maybe I'll get lucky. In light of that, Your Honor, I have no other special request.

**The Court:** All right.

N.T. 11/27/01 at 203–213 (emphasis added).

¶ 10 Based on existing case law, we conclude that the trial court properly denied Appellant's post-trial motion for a new trial since he did not make a timely request for the declaration of a mistrial. For example, in *McMillen v. 84 Lumber, Inc.*, 538 Pa. 567, 649 A.2d 932 (1994), an expert offered testimony in direct defiance of the trial court's explicit instruction prohibiting the testimony. The appellees' attorney [3] interposed an objection, and the trial court sustained the objection. However, the appellee's attorney did not request a mistrial. Rather, "[the][a]ppellees' counsel apparently gambled that they could still win before the jury empaneled as opposed to incurring the expenditure of time and money that would necessarily occur if a mistrial were granted and a new trial ordered." *McMillen*, 538 Pa. at 570, 649 A.2d at 933. In post-trial motions, the appellees asked for a new trial based on the expert's violation, and the Supreme Court concluded that the request for a new trial had been waived because the appellees had not requested a mistrial. While the Supreme Court concluded that the waiver principle was harsh, it stated that "[h]owever difficult some strategic decisions are to trial counsel, a party is bound by his or her counsel's actions and if an issue is waived on strategic grounds or by inadvertence, it is waived." *McMillen*, 538 Pa. at 572, 649 A.2d at 934. The Supreme Court recognized that there existed an exception to the waiver policy, namely that the "failure to preserve an issue on appeal will be excused when a strong, public interest outweighs the need to protect the judicial system from improperly preserved issues." *McMillen*, 538 Pa. at 571, 649

A.2d at 934. However, the Supreme Court concluded that the exception did not apply to the fairly routine civil case presented in *McMillen*. Rather, the Supreme Court suggested that the exception applied primarily to capital cases in the domain of criminal law, when a human life is at stake. *Id.*

¶ 11 In *Factor v. Bicycle Technology, Inc.*, 550 Pa. 500, 707 A.2d 504 (1998), the Supreme Court revisited the issue of when a party must request a mistrial in order to preserve its request for a new trial based on an evidentiary error. In *Factor*, an expert testified beyond the scope of his pretrial report, and the appellants moved to strike the expert's testimony and requested a cautionary instruction. The trial court denied the motion, but indicated that if the appellants requested a mistrial he would consider it if raised in post-trial motions. The appellants did not request a mistrial, but later asked for a new trial in post-trial motions.

¶ 12 In ruling that the appellants did not waive their objection by failing to move for a mistrial, the Supreme Court in *Factor* specifically distinguished *McMillen*. The Supreme Court stated that:

The essential factor in *McMillen*, which differ[ed] from the case [in *Factor*], is that the McMillens' objection to the evidence was sustained. At that juncture, there was no evidentiary issue pending before the court. In [*Factor*], by contrast, [the] appellants moved to strike the testimony, and the motion was denied. [The][a]ppellants' counsel reiterated the motion and the trial court reiterated its denial. The trial court's refusal to grant the lesser remedy of sustaining the Factors' objection and striking [the expert's] testimony relieved

---

[3]. The appellees in *McMillen* were the appellants when the case was on appeal to this Court. A panel of this Court reversed the trial court and ordered a new trial; however, an appeal was taken to the Pennsylvania Supreme Court, which reversed this Court.

the Factors of a duty to move for the greater remedy of a mistrial. After denying the Factors' objection to [the expert's] testimony, the court referred to its obligation to revisit the issue on post-trial motions should the motion be repeated, as it was.

*Factor*, 550 Pa. at 504–505, 707 A.2d at 506–507 (emphasis omitted). Based on these circumstances, the Supreme Court refused to find waiver.

¶ 13 In the case *sub* judice, the record reveals that Appellant's attorney made a timely objection to Appellee's attorney's question concerning limited tort coverage. The trial court sustained the objections and made it quite clear that it believed the limited tort question asked by Appellee's attorney was improper. However, Appellant's attorney never requested a mistrial, and in fact, specifically stated that he was not going to go so far as to request a mistrial.[4] Instead, he sought a "compromise," whereby the trial court would instruct the jury that "serious impairment" included Appellant's inability to become a police officer. When the trial court indicated that it was not inclined to include this request in its charge to the jury, Appellant's attorney stated he had no other "special request."

¶ 14 We conclude that the facts in this case are akin to those in *McMillen*, and, therefore, Appellant has failed to preserve his request for a new trial by failing to request a mistrial. *See Allied Electrical Supply Co. v. Roberts*, 797 A.2d 362 (Pa.Super.2002) (indicating that objection and request for mistrial must be timely and that asking for mistrial for first time after jury was charged was too late). We note that Appellant contends that the exception enunciated in *Factor* should apply

since he asked for a lesser remedy, i.e., a charge to the jury as to what could be considered as a serious impairment, which the trial court eventually denied. We disagree this is the type of lesser remedy the Supreme Court had in mind in *Factor*. Rather, in *Factor*, when the Supreme Court discussed the "lesser remedy," it was speaking as to the fact the trial court refused to sustain the objection, strike the testimony, or give a cautionary instruction. Moreover, we disagree with Appellant's assertion that there is a strong, public interest to excuse waiver in this case. As in *McMillen*, this is a fairly routine civil case, no human life is at stake. In addition, we find unpersuasive Appellant's argument that his indication that he was not asking for a mistrial "at this time," preserved his issue for appeal. The simple fact is that the time to ask for a mistrial was during trial, after the trial court sustained the objection. Pursuant to *McMillen*, asking for a new trial in post-trial motions, after the verdict was recorded, was insufficient to preserve the issue. As the Supreme Court indicated in *McMillen*, excusing waiver in circumstances such as those presented in this case would "result in endless retrials and endless appeals. That is contrary to the sound principles of judicial administration...." *McMillen*, 538 Pa. at 572, 649 A.2d at 934 (citation omitted).

■ ¶ 15 Appellant's final claim is that the trial court erred in denying Appellant's request for a continuance so that he could have more fully presented his damages to establish "serious impairment." Appellant contends that the trial court should have continued the case until Appellant received the results of a myelogram, which was

**4.** Appellant suggests that it was error for the trial court to not give a cautionary instruction regarding the limited tort question. However, Appellant never requested a cautionary instruction.

taken a few days prior to the commencement of trial. We find Appellant's argument to be waived.

¶ 16 In his one page argument, Appellant has cited no authority supporting his position, and he has not cited to that portion of the record where his claim has been preserved. *See* Pa.R.A.P. 2119. Our independent review of the record reveals that, half an hour prior to the commencement of trial, Appellant's counsel argued a motion for continuance before the Honorable Allan Tereshko, who apparently denied Appellant's request. N.T. 11/26/01 at 4–5. When Appellant's case was called for trial before the Honorable Albert J. Snite, Jr., the following exchange occurred regarding the motion for continuance:

> **Judge Snite:** [Appellant's attorney] wanted to put something on the record concerning a request for a continuance. It was argued in front of Judge Tereshko and he denied it, and obviously nothing has occurred since you argued that in front of Judge Tereshko, what, half an hour ago or so?

> **Appellant's Attorney:** Your Honor, the basis of the continuance request was as follows. Roughly two weeks ago plaintiff's treating——

> **Judge Snite:** Actually since that was not in front of me, if you wish to make an affidavit, you can make an affidavit and file it. I'm simply saying that you are preserving your request for continuance, but since that was not on the record in front of Judge Tereshko, I don't plan to reconstruct that record now.

> All I plan to say [is] that because Judge Tereshko has heard it and has heard it this morning and since nothing else has occurred, then I will not entertain a reconsideration of that motion.

> If there's something you really need to put on the record concerning the mer-

it and substance of it, I think I would rather have it done by affidavit rather than putting it on the record now.

> **Appellant's Attorney:** I understand.

N.T. 11/26/01 at 4–6 (emphasis added).

¶ 17 Aside from this exchange occurring prior to trial, we have no evidence of Appellant's request for a continuance, any argument he made with regard thereto, or Judge Tereshko's reasons for denying Appellant's request. Appellant has not provided this Court with a transcript from any argument which may have occurred before Judge Tereshko, he did not file an affidavit as was suggested by Judge Snite, and, in fact, the certified record does not even contain a motion for a continuance. As it is an appellant's duty to ensure that the certified record is complete for review, we find Appellant's final issue to be waived. *Boyle v. Steiman,* 429 Pa.Super. 1, 631 A.2d 1025 (1993).

¶ 18 Affirmed.