**Rawdin v. Real**

*Robert F. Morris* and *Seth D. Wilson*, for plaintiffs
*Charles A. Fitzpatrick*, for defendants

ROGERS, *J.*, August 21, 2013—

## I. INTRODUCTION

Appellants Myrna Rawdin ("Mrs. Rawdin") and Martin Rawdin (jointly "appellants") have appealed to the Superior Court of Pennsylvania ("Superior Court") from this court's order denying their motion for post-trial relief dated and docketed on February 27, 2013, and entered as a final judgment on March 11, 2013, following a five (5) day jury trial and verdict in favor of Appellees Mark B.

Real, M.D. ("Dr. Real") and PMA Medical Specialists, LLC (jointly "appellees") and against appellants. For the reasons set forth below, judgment should be affirmed.

## II. FACTUAL AND PROCEDURAL HISTORY

The relevant facts and procedural history underlying this appeal are as follows. In 2001, Mrs. Rawdin began treating with Dr. Real, board certified in internal medicine and geriatrics, at PMA Medical Specialists. (Notes of Testimony ("N.T.") 9/10/12, at 43; N.T. 9/12/12, at 124-125). She attended her first office visit with Dr. Real on July 5, 2001, just prior to her sixty-third (63rd) birthday. (N.T. 9/10/12, at 40, 43; trial exhibit P-2). Mrs. Rawdin next saw Dr. Real on April 10, 2002, for an annual routine visit. (N.T. 9/10/12, at 49).

On June 17, 2003, Mrs. Rawdin experienced an episode of severe dizziness, which led her to call 911. (N.T. 9/10/12, at 52; N.T. 9/12/12, at 128; trial exhibit P-2, at 31-32). The ambulance transported her to the Pottstown Memorial Hospital Emergency Room ("ER"), where the medical staff ordered laboratory studies, an X-ray and a CAT scan of her brain. (N.T. 9/10/12, at 52; N.T. 9/12/12, at 128; trial exhibit P-2, at 31-32). The ER physician diagnosed labyrinthitis,[1] prescribed Antivert and told Mrs. Rawdin to follow up with her family doctor. (N.T. 9/10/12, at 53, 59; N.T. 9/12/12, at 128). Mrs. Rawdin saw Dr. Real on June 23, 2003. (N.T. 9/10/12, at 57-58; N.T. 9/12/12, at 128). Based on her presentation and what Mrs. Rawdin had told him about her episode of vertigo,

---

1. Labyrinthitis is an inflammation of the inner ear that can cause a loss of balance, vertigo and vomiting. Steadman's Medical Dictionary 2006.

Dr. Real ordered an MRI of her brain. (N.T. 9/12/12, at 128-29). Mrs. Rawdin obtained the MRI on July 2, 2003. (N.T. 9/10/12, at 61; trial exhibit P-2, at 29-30). The MRI revealed small vessel ischemic disease, which Dr. Real considered a common finding in individuals over the age of sixty (60). (N.T. 9/12/12, at 144, 146). A nurse from Dr. Real's office reported to Mrs. Rawdin that the results of her MRI were within normal limits. (N.T. 9/10/12, at 61; N.T. 9/12/12, at 147-48). Her symptoms of dizziness resolved within a couple of weeks after the MRI. (N.T. 9/10/12, at 64).

Mrs. Rawdin next saw Dr. Real on April 29, 2004, for her annual routine checkup. (*Id.* at 63). On November 1, 2004, Mrs. Rawdin again presented to Dr. Real. (*Id.* at 64). At this visit, she related an episode at her synagogue on October 29, 2004, when she experienced the sensation that her voice did not sound normal to her, although no one else noticed anything different. (*Id.* at 65, 67, 108). She also reported a little headache and dizziness, but that the speech problem, noticed only by her, had gone away almost immediately. (*Id.* at 67). As part of his examination, Dr. Real checked Mrs. Rawdin's ears and had a nurse remove a large amount of earwax from her left ear. (*Id.* at 68-69; N.T. 9/12/12, at 130-31). Dr. Real prescribed Meclizine for the dizziness, which resolved within a few days. (N.T. 9/10/12, at 69-70). Mrs. Rawdin did not see Dr. Real again after the November 1, 2004 visit. During the evening hours of Sunday, November 28, 2004, Mrs. Rawdin suffered an ischemic stroke involving the right side of her brain. (N.T. 9/10/12, at 70; N.T. 9/11/12, at 59, 61-62; trial exhibit P-1, P-2).

Appellants filed a medical professional liability

complaint against appellees on January 10, 2006, alleging, *inter alia*, Dr. Real's failure to diagnose and treat a transient ischemic attack. (complaint filed January 10, 2006, Montgomery County No. 2006-00386, at 4-5). On October 23, 2006, appellants filed a second medical professional liability complaint against Van Duy Nguyen, M.D. and PMA Medical Specialists, LLC. (Montgomery County No. 2006-26593). The Honorable Bernard A. Moore consolidated the two matters on November 13, 2008. On December 1, 2009, the parties stipulated to the dismissal of Dr. Nguyen with prejudice and the case ultimately proceeded to trial with jury selection on Friday, September 7, 2012.

On August 29, 2012, the undersigned heard argument on the parties motions *in limine*. The court subsequently denied appellees' motion to preclude Nancy Futrell, M.D. from offering any testimony on the issue of negligence based on 40 P.S. §1303.512. (Trial court order: motion in limine of defendants, Mark B. Real, M.D. and PMA Medical Specialists, LLC to preclude plaintiffs' proposed expert, Nancy Futrell, M.D., from offering any testimony on the issue of negligence, entered August 31, 2012). However, the court granted appellees' motion to preclude the testimony of two experts on the standard of care as cumulative and directed appellants' counsel to notify appellees' counsel whether appellants would present Nancy Futrell, M.D. or Paul Genecin, M.D. as their expert on the standard of care. (*Id.*). Appellants' counsel notified appellees' counsel by letter that they would present the testimony of Dr. Genecin on the standard of care and Dr. Futrell on causation. (Appellants' memorandum of law in support of post-trial motions, filed November 19, 2012, at

4). During jury selection on Friday, September 7, 2012, appellants made an oral motion for reconsideration of the court's order precluding the testimony of two experts on the standard of care as cumulative, which the court denied on the same day. (Trial court order: plaintiffs' motion to reconsider the court's order precluding the testimony of two experts on the standard of care as cumulative, entered September 7, 2012). Testimony and evidence commenced on Monday, September 10, 2012.

Appellants presented the expert testimony of Paul Genecin, M.D. on September 11, 2012. (N.T. 9/11/12, at 25-100). Dr. Genecin testified extensively on the appropriate standard of care and his opinion that Dr. Real violated that standard of care. (*Id.*). In addition, Dr. Genecin testified regarding causation of Mrs. Rawdin's stroke, both physiologically as well as the increased risk of harm incurred by Dr. Real's failure to order certain studies and perform a neurological workup. (*Id.* at 63-70). Outside the presence of the jury, the undersigned heard counsels' objections and responses to the causation testimony and the cumulative nature of Dr. Futrell's proffered testimony. (*Id.* at 72-75). The court then reiterated to counsel, "Dr. Futrell will not be permitted to testify about those — anything that's cumulative to what Dr. Genecin testified to. That was my order." (N.T. 9/11/12, at 75). After additional argument the following morning, the court sustained appellees' objections and limited the testimony of Dr. Futrell on direct to damages. (N.T. 9/12/12, at 3-25). Dr. Futrell also testified concerning the applicable standard of care and causation in rebuttal to defendant's expert, Christopher Loftus. (*Id.* at 50-68).

Before testimony resumed on the morning of September

13, 2012, the undersigned memorialized the charging conference with counsel. The court explained that it would be making a slight change to suggested jury instruction 14.120 by omitting one sentence. (N.T. 9/13/12, at 5, 7-8). The deleted sentence states: "Nor does your verdict involve the defendant's reputation, his medical practice, or his rights as a licensed physician." (*Id.*). Appellants' counsel took an exception to the deletion of that sentence from the jury instruction. (*Id.* at 7). That afternoon, the jury returned its unanimous verdict in favor of appellees. Specifically, in answer to the first question, "Do you find that the conduct of [Dr. Real] fell below the applicable standard of medical care? In other words, was [Dr. Real] negligent?", the jury answered, "no". (*Id.* at 137-38; verdict sheet).

Appellants timely filed post-trial motions on September 24, 2012 and the court heard argument on February 6, 2013. The undersigned issued an order denying appellants' post-trial motions on February 27, 2013. The prothonotary entered final judgment and the Rule 236 notice on March 11, 2013. Appellants filed a notice of appeal on March 19, 2013. On March 21, 2013, the undersigned issued an order directing appellants to file and serve a concise statement of the errors complained of on appeal ("concise statement"). Appellants filed a concise statement on April 8, 2013.

## III. ISSUES

Appellants raise the following four (4) issues on appeal:

1. A new trial should be granted because the trial court erred and abused its discretion in granting defendants' motion in limine to preclude plaintiffs' expert, Nancy Futrell, M.D. from testifying as to any opinions on the

standard of care.

2. A new trial should be granted because the trial court erred and abused its discretion in sustaining defendant's objections to the testimony of Nancy Futrell, M.D. and precluding Nancy Futrell, M.D. from testifying as to any issues other than the damages sustained by Mrs. Rawdin and the rebuttal of the testimony of defendants' expert, Christopher Loftus, M.D.

3. A new trial should be granted because the trial court erred and abused its discretion in failing to sustain plaintiffs' objection, which was raised during defense counsel's closing argument, that Nancy Futrell, M.D. failed to testify on the issues of negligence and causation, because earlier rulings made by the court precluded Dr. Futrell's testimony in these areas.

4. A new trial should be granted because the trial court erred in failing to instruct the jury in accordance with Pennsylvania Suggested Standard Jury Instruction 14.120.

(Appellants' concise statement filed April 8, 2013).

## IV. DISCUSSION

In their first two issues on appeal, appellants assert that this court erred as a matter of law and abused its discretion regarding rulings it made concerning one of appellants' experts, Nancy Futrell, M.D. before she testified at trial. We will address them together.

First, appellants posit that the court erred in granting appellees' motion *in limine* to preclude Dr. Futrell from testifying as to any opinions on the standard of care. At

the outset, this court notes that appellants mischaracterize the court's order. In actuality, the court denied appellees' motion to preclude Nancy Futrell, M.D. from offering any testimony on the issue of negligence. (Trial court order, entered 8/31/12). Rather, the court granted appellees' motion to preclude the testimony of two experts on the standard of care as cumulative and directed appellants to notify appellees which of their two proposed experts would testify on the standard of care before the completion of jury selection more than one week later. (*Id.*). Appellants' counsel notified appellees' counsel on September 5, 2012 (Plaintiff's memorandum of law in support of post-trial motions, p. 4), and the undersigned on September 10, 2012, that they would present Paul Genecin, M.D. on the standard of care and Nancy Futrell, M.D. on causation and damages. (N.T. 9/12/12, at 24).

Second, appellants assert that the court erred and abused its discretion in sustaining appellees' objections to Dr. Futrell's potentially cumulative testimony following the testimony appellants' counsel elicited from Dr. Genecin and, consequently, limiting Dr. Futrell's testimony to damages and the rebuttal of appellees' expert. Appellants insist that they are entitled to a new trial. No relief is due.

To prevail in an action asserting professional negligence, a plaintiff must plead and prove four elements:

(1) the physician owed a duty to the patient; (2) the physician breached that duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) the damages suffered by the patient were a direct result of that harm.

*Corrado v. Thomas Jefferson University Hospital*, 790 A.2d 1022, 1030 (Pa.Super. 2001) (citation omitted).

*Hatwood v. Hospital of the University of Pennsylvania*, 55 A.3d 1229, 1241 (Pa.Super. 2012). *Accord Carrozza v. Greenbaum*, 866 A.2d 369, 379 (Pa.Super. 2004) (citations omitted). "[T]he most distinguishing feature of professional malpractice is the need for expert testimony to clarify complex issues for a jury of laypersons." *Merlini v. Gallitzin Water Authority*, 602 Pa. 346, 354, 980 A.2d 502, 506 (2009) (citing *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 573 Pa. 245, 824 A.2d 1140, 1145 (2003)); *accord Carrozza, supra.*

Pennsylvania law provides a trial court with broad power and discretion to limit the number of witnesses whose testimony is similar or cumulative as well as any cumulative evidence presented to a jury. *See* Pa.R.C.P. 223(1); Pa.R.E. 403. An appellate court's standard of review for evidentiary rulings is a narrow one. *Hatwood, supra* at 1239 (citation omitted). "The admission of expert testimony is within the trial court's sound discretion and [the appellate courts] will not disturb that decision without a showing of manifest abuse of discretion." *Whitaker v. Frankford Hospital of City of Philadelphia*, 984 A.2d 512, 522 (Pa.Super. 2009) (citation omitted); *accord Jacobs v. Chatwani*, 922 A.2d 950, 956 (Pa.Super. 2007) (citing *Smith v. Paoli Memorial Hospital*, 885 A.2d 1012, 1016 (Pa.Super. 2005)). As the Superior Court has previously explained:

"Evidentiary rulings are committed to the sound discretion of the trial court, and will not be overruled absent an abuse of discretion or error of law." *Takes*

*v. Metropolitan Edison Co.*, 440 Pa.Super. 101, 655 A.2d 138, 145 (1995) *(en banc), reversed in part on other grounds*, 548 Pa. 92, 695 A.2d 397 (1997). "In order to find that the trial court's evidentiary rulings constituted reversible error, such rulings must not only have been erroneous but must also have been harmful to the complaining party." *Collins* [*v. Cooper*], 746 A.2d [615,] 619 [ (Pa.Super. 2000) ] citing *Romeo v. Manuel*, 703 A.2d 530, 532 (Pa.Super. 1997). "'Appellant must therefore show error in the evidentiary ruling and resulting prejudice, thus constituting an abuse of discretion by the lower court.'" *Id.* at 620[.]

*Oxford Presbyterian Church v. Weil-McLain Co., Inc.*, 815 A.2d 1094, 1099-1100 (Pa.Super. 2003).

*Whitaker, supra.* "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Jacobs, supra* (citing *Freed v. Geisinger Medical Center*, 910 A.2d 68, 72 (Pa.Super. 2006)).

In the case *sub judice*, at argument of the motion *in limine* to preclude Nancy Futrell, M.D. from testifying as to any opinions on standard of care and the oral motion to reconsider, at trial and at argument on appellants' post trial motion, counsel has repeatedly asserted the same reasons why appellants proffered Dr. Futrell's opinion testimony on the standard of care as well as causation. For example, counsel argued as follows:

[H]er qualifications are very different from Dr.

Genecin's qualifications, particularly on a causation issue, because she treats lots and lots of stroke victims, always has through her career. She's widely published in this area as to what the treatments are to treat stroke victims, what the tests are that are done by stroke doctors to rule out TIAs and strokes. And because her qualifications are very different from Dr. Genecin's on that point, I would request that she be allowed to bolster his opinion with her own credentials.

\* \* \* \*

[A]n internist doesn't treat as many stroke patients as a stroke expert does. A stroke expert, when she says that I treat these patients, I offer these treatments to them, I follow them up after they're referred to me by internists, and we could have prevented this stroke, it carries different weight than the internist who's referring to it because of her qualifications. And therefore I want her to be able to back up this testimony with her particular qualifications in treating strokes.

(N.T. 9/12/12, at 5-7).

There was only one defendant doctor in this case. More than a week before trial, the court issued its order limiting each party to one expert on the standard of care and one expert on causation. Appellants could have presented Dr. Futrell as their expert on both the standard of care as well as causation, but did not. Appellants could have sought leave to amend Dr. Genecin's expert report on the standard of care, but did not. (N.T. post trial motions 2/6/13, at 7-9). Appellants could have presented Dr. Genecin's expert opinion only on the standard of care and Dr. Futrell's expert

opinion on causation, but did not. Not only did appellants' chosen expert on the standard of care, Dr. Genecin, also testify on causation, counsel specifically asked him for clarification of his opinion on causation to a reasonable degree of medical certainty. (N.T. 9/11/12, at 66-70). Finally, although not controlling, the undersigned notes on review that the jury never reached the issue of causation, determining first and foremost that Dr. Real did not violate the standard of care in his diagnosis and treatment of Mrs. Rawdin and, therefore, was not negligent. (Jury verdict, entered September 13, 2012). This court did not abuse its discretion in limiting the testimony of Dr. Futrell.

In appellants' third issue on appeal, they claim that they are also entitled to a new trial because this court erred and abused its discretion by not sustaining counsel's objection to appellees' closing argument wherein counsel argued that Nancy Futrell, M.D. failed to testify on the issues of negligence and causation. Again, counsel mischaracterizes the circumstances and the court's ruling.

Preliminarily, appellees argue that appellants have waived this issue by failing to request a mistrial at the close of the charge of the court. (N.T. 9/13/13, at 129). *See McMillen v. 84 Lumber, Inc.*, 538 Pa. 567, 649 A.2d 932 (1994). *See also Gbur v. Golio*, 600 Pa. 57, 75, 963 A.2d 443, 454 (2009) (stating long-settled axiom that trial counsel is required to make a timely and specific objection during trial to preserve an issue for appeal). Regardless, the undersigned would not have granted a mistrial had one been requested, nor is a new trial warranted now.

It is long settled "that not every intemperate remark by an attorney requires a mistrial." *Dillow v. Myers*, 916 A.2d

698, 701 (Pa.Super. 2007) (citation omitted). Comments which do not mislead or confuse the jury do not deprive a party of a fair trial. *Id.* at 702 (citation omitted).

> "Regarding statements during opening and closing arguments, our Supreme Court has held that '[s]o long as no liberties are taken with the evidence, a lawyer is free to draw such inferences as he wishes from the testimony and to present his case in the light most suited to advance his cause and win a verdict in the jury box.'" *Wagner v. Anzon, Inc.*, 453 Pa. Super. 619, 684 A.2d 570, 578 (1996) (citation omitted). "However, this latitude does not include discussion of facts not in evidence which are prejudicial to the opposing party." *Id.* "In general, any prejudicial remarks made by counsel during argument can be handled 'within the broad powers and discretion of the trial judge and his actions will not be disturbed on appeal unless there is an obvious abuse of discretion.'" *Id.*

*Hyrcza v. West Penn Allegheny Health System, Inc.*, 978 A.2d 961, 977 (Pa.Super. 2009).

Instantly, appellants' counsel objected to the following statement by appellees' counsel in closing: "Dr. Futrell never expressed an opinion — the stroke expert never expressed an opinion about whether or not the signs and symptoms on that day were suspicious for a TIA." (N.T. 9/13/12, at 92). At the conference at sidebar, the undersigned instructed appellees' counsel to segue out of that argument and permitted appellants' counsel to respond to the statement if he so desired. (*Id.*) On rebuttal, appellants' counsel explained to the jury "[i]t was decided before trial that Dr. Futrell would testify only on the issues

that she did testify about and that Dr. Genecin would cover that, rather than have multiple experts testify on the same thing." (*Id.* at 98-99). The jury was not misled or confused into believing that Dr. Futrell would not have opined that the symptoms on that day were suspicious for a TIA had she been given the opportunity.[2] Appellants' counsel cured any potential for prejudice with his explanation. Accordingly, appellants' third claim on appeal is unavailing.

In their final issue, appellants posit that the court erred and abused its discretion by not reading one sentence from one of many requested standard jury instructions. Appellants' claim is devoid of merit.

When reviewing a challenge to a jury instruction, an appellate court is limited to determining "whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case." *Cooper v. Lankenau Hospital*, _ Pa. _, _, 51 A.3d 183, 187 (2012) (citation omitted). On examination, "the entire charge is considered, as opposed to merely discrete portions thereof." *Id.* (citation omitted).

> A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue. Therefore, a charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said.

*Hyrcza, supra* at 974 (citation omitted); *accord Hatwood,*

---

2. One implication of counsel's statement would be that Dr. Futrell would have so testified if Dr. Futrell actually believed that was the case. The court is confident that appellants' counsel successfully refuted such an implication.

*supra* at 1241. "[T]he law has long been that the trial court need not use specific language to instruct the jury, so long as it accurately explains the law. After all, they are only *suggested* instructions." *Schaaf v. Kaufman*, 850 A.2d 655, 663 (Pa.Super. 2004) (citation omitted).

Instantly, after instructing the jury on professional negligence and factual cause, the undersigned read the following instruction on irrelevant considerations:

A professional medical negligence or medical malpractice case is a civil action for damages and nothing more. You must decide only the issue of whether the plaintiff, Dr. Real, has — I'm sorry — whether the plaintiff, Mrs. Rawdin, has suffered injuries as a result of Dr. Real's negligence and is thus entitled to monetary compensation for those injuries. Your verdict does not involve the punishment of the defendant or even criticism of his professional abilities beyond the facts of this case. You should not concern yourselves with any other matter, such as social or political issues related to medicine. No thought should be given to these irrelevant considerations in reaching your verdict.

(N.T. 9/13/12, at 116). These instructions followed the court's charge on evidence, credibility, conflicts in testimony and experts. (*Id.* at 103-115). The court went on to instruct on damages, the verdict sheet and the concluding jury charge. (*Id.* at 116-135). The court declined to read one sentence from suggested jury instruction §14.120 because of the undersigned's belief that the instruction as written is inaccurate. (*Id.* at 5, 7-8). The deleted sentence states: "Nor does your verdict involve the defendant's reputation, his medical practice, or his rights as a licensed

physician." *See* Pennsylvania Suggested Standard Jury Instruction (Civil) §14.120 (2011).

This court notes that the Superior Court has affirmed both a trial court's reading of the entire "irrelevant considerations" instruction as well as a trial court's reading of the majority of the charge as long as the "basic thrust" of the charge is conveyed. *Compare Hyrcza, supra* at 975 (affirming Judge Eaton's reading of the entire charge); and *Schaaf, supra* at 663-64 (affirming Judge Glazer's deletion of almost identical language from Pa. SSJI (Civ) §10.07). As the Honorable Richard B. Klein explained in *Schaaf, supra,* "some of the jurors may know about the reporting requirement and know that an adverse verdict might affect the doctor." *Id.* at 663.

In this case, the court conveyed the essential thrust of the instruction, which was to inform the jury "that the only issue was whether [Dr. Real] was negligent, and that the jury had to disregard other, irrelevant considerations." *See Schaaf, supra.* As a result, the instruction was proper as given and appellants' final issue merits no relief.

## V. CONCLUSION

Based upon the reasoning set forth herein, the undersigned respectfully requests that the judgment be affirmed.