2019 PA Super 336

| LOUIS FARESE AND KATHARINE FARESE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| JAMES ROBINSON AND VENTURI TECHNOLOGIES, INC. | : | No. 145 EDA 2018 |
| Appellant | : | |

Appeal from the Judgment entered December 4, 2017
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  April 2015 No. 01084

BEFORE:  LAZARUS, J., KUNSELMAN, J., and COLINS, J.*

DISSENTING OPINION BY LAZARUS, J.:          **FILED NOVEMBER 08, 2019**

I respectfully dissent.  First, I do not believe that Appellants waived their request for a new trial based upon counsel failing to "clearly"[1] or "explicitly"[2] request a mistrial during or after the conclusion of closing argument.  Second, contrary to the majority's determination that the trial judge's efforts "extinguished" the "flames of prejudice"[3] ignited by Appellees, I believe that the trial court's lackadaisical attempts to control counsel's conduct hardly cured the harm.  Third, Appellees' counsel's repeated inflammatory comments, made throughout his opening and closing arguments, prejudiced

---

[1] **See** Majority Opinion, 11/8/19, at 17.

[2] **Id.** at 10.

[3] **Id.** at 19.

*Retired Senior Judge assigned to the Superior Court.

the fact finder, so much so that even a proper curative instruction would not have "adequately obliterate[ed] the taint."[4] Accordingly, I conclude that a new trial on damages is warranted under the specific facts of this case.

I wholeheartedly disagree that Appellants waived their argument to support a new trial on the basis of counsel's comments made during closing argument. Here, the rule of issue preservation, first espoused in **Dilliplaine v. Lehigh Valley Trust Co.**, 322 A.2d 114 (Pa. 1974),[5] was clearly satisfied where Appellants' counsel renewed his objections throughout opening and closing arguments on the same general basis – Appellees' counsel improperly interjecting punitive elements into the case. Moreover, Appellees' counsel's error was repeatedly brought to the court's attention as Appellants' counsel referenced "mistrial" no fewer than ten times throughout opening argument. **See** N.T. Trial (Jury), 9/27/16 at 46, 67, 71, 73, 111, 146, 194, 19-97. Notably, when overruling Appellants' counsel's objection to Appellees'

---

[4] **Young v. Washington Hosp.**, 761 A.2d 559, 561-62 (Pa. Super. 2000).

[5] The **Dilliplaine** Court explained that requiring a timely, specific objection at trial promoted judicial efficiency by giving the trial court the opportunity to correct trial errors, reducing the need for appellate review of those issues, and avoiding the delay to litigants inherent in appellate review. **Id.** at 117. The **"Dilliplaine** rule" has come to be known as the "contemporaneous objection" rule and is now codified in Pa.R.C.P. 227.1(b). **See Stapas v. Giant Eagle, Inc.**, 197 A.3d 244, 248 (Pa. 2018). Cases such as **McMillen v. 84 Lumber**, 649 A.2d 932 (Pa. 1994) and **Tagnani v. Few**, 426 A.2d 595 (Pa. 1981), have extended this waiver principle to require not only timely objections, but now, in certain circumstances, request of an additional remedy such as a curative instruction or mistrial before a litigant can be deemed to have preserved his or her right to request a new trial.

counsel's repeated references to Appellants' "ill motives," the trial court noted Appellees' counsel's remarks were "borderline," *id.* at 66, and that if counsel were to continue down that path it would be grounds for a mistrial. *Id.* at 67 ("We're borderline – I don't think that last question isn't proper. The last thing. I'm going to allow it, but if it gets to the point where I'm going to have to allow [Appellants' counsel] to say, in my mind, we've been more than generous. *Then it's a mistrial*.") (emphasis added). *Compare Tagnani v. Lew*, 426 A.2d 595 (Pa. 1981) (where opposing counsel asked *one* improper question, as opposed to continuously interjecting improper references throughout trial, counsel's singular objection was inadequate to protect client's interests; request for curative instruction or mistrial required to preserve issue and warrant grant of new trial), *with Siegal v. Stefanyszyn*, 718 A.2d 1274, 1277 n.5 (Pa. Super. 1998) (in refuting waiver argument, Court noted appellants' counsel's continuing contest of trial judge's ruling effectuated purpose of objecting, promulgated in *Dilliplaine*, which is "to acquaint the trial judge with a claim of error and present the judge with an opportunity to correct the error.").

In addition to the multiple objections made by Appellants' counsel throughout closing argument, several of counsel's objections were either overruled by the trial judge in closing arguments or never ruled upon in open court. Thus, this situation better aligns with the facts in *Factor* than *McMillen,* and militates against waiver. *See Factor v. Bicycle Tech.*, 707 A.3d 504 (Pa. 1998) (where objection to evidence in *McMillen* was sustained

- 3 -

by court and where trial court in **Factor** denied appellants' motion to strike expert testimony, no waiver found in **Factor** where asking for mistrial would be irrelevant). **See also Deeds v. Univ. of Pa. Med. Ctr.**, 110 A.3d 1009 (Pa. Super. 2015) (same holding as **Factor**); **Siegal**, **supra** (same).

With regard to a curative instruction, it is imperative to note that Appellants' counsel actually began to ask for a curative instruction after Appellees' counsel made repeated, improper references to the cost of litigation in closing arguments; Appellants' counsel, however, was interrupted by the trial judge who told counsel he could give him an instruction before they broke for lunch. **See** N.T. Trial (Jury), 10/3/16, at 73. In fact, earlier on the morning of closing arguments, Appellants' counsel asked the court to give an instruction (#14)[6] regarding punitive damages not being an issue in the case based on Appellees' counsel's prior inflammatory remarks. The court,

_____

[6] Appellants' proposed jury instructions #14 stated:

> You may not include in any award to the Plaintiff any amount that you might add for the purpose of punishing Defendant or to serve as an example or warning for others. Such damages would be punitive, and are not authorized. **Wildman v. Burlington Northern R. Co.**, 825 F.2d 1392 (9th Cir. 1987); **Kozar v. Chesapeake & Ohio Ry.**, 449 F.2d 1238, 1240 (6th Cir. 1974); **Matter of Mardoc Asbestos Case Clusters 1, 2, 5 and 6**, 768 F.Supp. 595, 597 (E.D. Mich. 1991); **Toscano v. Burlington Northern R. Co.**, 678 F.Supp. 1477, 1479 (D. Mont. 1987).

Defendants' Proposed Jury Instructions, 9/19/16, at ¶ 14.

however, left that requested charge "open . . . [r]ight now . . . [and did] not
. . . accept it." *Id.* at 18-19.

Finally, the court's bland instruction that the jury should "keep [their]
deliberations free of any bias or prejudice"[7] falls woefully short of curing any
prejudice inflicted by Appellees' counsel in opening and closing arguments.
*Siegal*, *supra* (in deciding to grant new trial, Court noted that it "was forced
to conclude that . . . the [court's] instruction did not accurately convey to the
jury what was true. . . and the thrust of the instruction was not directed toward
that damage done[.]").  The court gave no explanation of punitive damages
to the jury, nor did it provide an admonition that punitives were not at issue
in the case.

Moreover, had Appellants offered a curative instruction, in addition to
their proposed Jury Instruction #14, which the court left "open" and never
issued, *see* N.T. Trial (Jury), 10/3/16 at 18, I would find that the current
situation falls within the narrow line of cases "where the comments of counsel
are so offensive or egregious that no curative instruction can adequately
obliterate the taint." *Young*, 761 A.3d at 561-62.  The trial court's repeated
tolerance of Appellees' counsel's inflammatory remarks made throughout
opening and closing arguments,[8] overruling of several of Appellants' counsel's

_____

[7] N.T. Trial (Jury), 10/3/16, at 169.

[8] Although the relevant prejudicial comments and interjections by Appellees'
counsel occurred during opening and closing arguments, Appellants also

objections, and failure to make critical rulings on other objections in open court neither "alleviated any such concern[s]," nor amounted to "numerous and persistent efforts to ameliorate each transgression and preserve the integrity of the trial." Majority Opinion, 11/8/19, at 18.

In coming to my conclusion that there is no waiver and that a new trial is warranted under the facts of this case, I recognize the strong policy considerations behind the waiver rule, first espoused in **Dilliplaine** and reiterated in **McMillen**. However, I do not believe those are implicated by the facts of this case where the court was clearly aware[9] of counsel's repeated objections to Appellees' counsel's prejudicial actions throughout opening and closing arguments and where the court had more than sufficient opportunity to correct the error. **Cf. McMillen**, **supra** (court found waiver where trial

_____

objected to several errors during trial. In particular, Appellants' counsel objected to the Appellees showing the jury photographs of Mr. Farese's vehicle after the accident, on the grounds that the photos allowed the jury to speculate how the severe damage related to the plaintiff's injuries and that it unduly prejudiced Appellants. **See** N.T. Trial (Jury), 10/30/16, at 38-39.

[9] To illustrate just how aware the trial judge was regarding Appellants' objections to Appellees' counsel's prejudicial behavior, the trial judge, himself, noted:

> I've been practicing for 27 years. I've never in the courtroom seen closing arguments in a personal injury lawsuit concentrate more on the behavior of the attorney and his clients and how horrible.

N.T. Trial (Jury), 10/3/16, at 90-93

counsel's singular and sustained objection to opposing counsel's violation of court order limiting witness testimony did not also consist of motion for mistrial); *Tagnani*, 426 A.2d at 374-75 ("Appellate court consideration of issues not raised in the trial court results in the trial becoming merely a dress rehearsal. . . . Failure to interpose a timely objection at trial denies the trial court the chance to hear argument on the issue and an opportunity to correct the error.").[10]

Here, where Appellees' counsel's comments had the unavoidable effect of improperly influencing the jury's determination,[11] a new trial is

_____

[10] While the preferred course of action may have been for counsel to request a second mistrial after closing arguments, as discussed *supra*, the waiver doctrine is not served by applying it to the instant case, where Appellees' counsel *did* move at the beginning of trial for a mistrial, and *repeatedly and consistently objected* to Appellees' counsel's continuing prejudicial remarks – a common thread woven throughout the case.

[11] The following excerpts from opening and closing statements illustrate Appellees' counsel's inflammatory and prejudicial remarks necessitating a new trial:

> The next reason we're suing the defendants is because **they have a low value for human well-being.**
>
> They don't want [Plaintiff] to have [ongoing medical treatment]. They don't want to pay for it.
>
> The last reason we're here is because the defendants refused to provide full and fair compensation. We're forced to bring them to trial.
>
> **Defendants know how expensive this [trial] is.** They bring us to court.

---

N.T. Trial (Jury), 9/27/16, at 63-64, 69-70, 74 (emphasis added).

> They know just how difficult that is to do, spending thousands of dollars to bring plaintiff's treating physicians in to have them testify on their behalf.
>
> \*    \*    \*
>
> **Well, what's crazy is having to spend $5,000 to pay a doctor to come in here.**
>
> We all know how expensive medical care costs are. We know what it costs to go for treatments and get medicines and things like that. What's crazy is forcing us to have to do that, and people like Venturi with companies like that and people like Mr. Robinson, they know this. What they also know is there's [sic] a certain amount of people that can't do it.
>
> \*    \*    \*
>
> **You may be outraged by it. You should be.** That's a lot of money to have to spend. But those are crazy numbers.

N.T. Trial (Jury), 10/3/16, at 70-71 (emphasis added). In closing statements, Appellees' counsel also made the following remarks:

> They're calling Mr. Farese a fraud. That's what they're saying he is here in court, a fraud.
>
> Shame on them for doing this to him, for what they've put him through for the past years and what he has to go through for the next at least 20 years and what they've done to him in this courtroom. **Shame on those defendants for doing this to him.**
>
> They brought [Mr. Farese] to court, and the part about this that really is so aggravating to Mr. Farese and his family is that this saying that they've agreed to negligence, it wasn't always like that. They didn't want to agree until they were forced to about what happened here.

They blamed Mr. Farese for what happened. They then go and file, if an accident occurred in the manner alleged by the plaintiffs, then such accident occurred as a result of the negligence of the plaintiff, Mr. Farese. Are you kidding me? This is what this gentleman has been tormented for in the past years. They knew exactly what they were doing. This case was going to court from day one and he had to do everything possible to protect himself from how he was being treated.

What sort of people slams somebody in the rear, causes the car to flip up in the air, causes injury to these people and then says, let's make up an excuse, let's come up with some reason why we don't have to pay them as much money as they're entitled to.

They could [sic] care less about what they did to Mr. Farese, trying to make him look like he's not hurt that bad.

[]This is how he gets treated by these people.

You know what? The thought always is, well, let's throw out what we can, let's say that we're responsible for the accident. Because maybe the jury will like us if we do that so we can save some money. **That's not taking responsibility for anything, ladies and gentlemen. These people didn't even bother to show up to court. [T]hey don't even have the courtesy to show up here.**

Responsibility is paying in full for what you did.

[W]hat these people are doing here is trying to avoid what their responsibility is. They're hiding from it. . . . You see, the defendants also have no limits on how they attack someone's character.

\* \* \*

This is about real human suffering that's going on and the defendants just don't want to pay for it. That's the bottom line.

N.T. Trial (Jury), 10/3/16, at 59, 61-65, 70-71, 88 (emphasis added). Finally, the following portion of Appellees' counsel's closing argument certainly "fan[s]

- 9 -

the flames of prejudice," Proposed Majority Opinion, 11/8/19, at 19, and improperly injects punitive elements into a compensatory damages case:

> **How the defendants view human well-being is in your hands.** The only tool that you have that you'[v]e giv[en] in our judicial system is one by entering a full and fair award. That will be the determinant for these people to follow the rules.
>
> **Society is going to have to know any time they're driving in front of a Venturi Technologies truck, they're going to be okay. These people have to know they need to spend more money on making the highway safe for other motorists tha[t] come to court and try [] to protect their money now.**
>
> **Protecting money can never be more important than protecting the safety and well-being of a human being.** All we're asking you to do is hold them responsible for what they broke.
>
> \* \* \*
>
> What they've taken away from [Mr. Farese] is his good name, a good name he's enjoyed before he get involved with any of this. To prevent the amount of money. They've put Mr. Farese's good name in jeopardy in public.
>
> \* \* \*
>
> It's all to protect their money. **They'll do anything to protect that money.** Blame people and tell the jury things they shouldn't be telling him. You see it didn't just stop there. It wasn't just [Mr. Farese] they attacked in court here. It was his doctors too.
>
> \* \* \*
>
> That's what [Mr. Farese] wants. **The doctors will be vindicated by you.** That's what they want.

N.T. Trial (Jury), 10/3/16, at 94-96 (emphasis added).

The language emphasized in the above-quoted text from counsel's opening and closing arguments, read in the context of the entire proceedings, certainly prejudiced the fact finder where Appellees interjected the issues of

unquestionably warranted. ***See Deeds***, ***supra***; ***see also Nelson v. Airco Welders Supply***, 107 A.3d 146 (Pa. Super. 2014). In essence, Appellees' counsel's repeated remarks about Appellants' improper motives tainted the entire judicial proceeding, such that Appellants' counsel's objections and request of a mistrial in opening statements, combined with his repeated objections throughout closing arguments, sufficed to preserve Appellant's request for a new trial. ***Poust v. Hylton***, 940 A.2d 380 (Pa. Super. 2007). Thus, I dissent.

---

Appellants' allegedly frivolous defenses, the exorbitant amount of money Appellants had to spend to find doctors to testify in the case, and the alleged need to protect society's well-being from Appellants' actions. The language was prejudicial to Appellants, especially where the statements appealed to the passions of the jury and the trial judge neither sustained objections to those statements in open court, nor issued a curative instruction to correct any potential prejudice.

    As demonstrated by the above-quoted excerpts from trial, Appellants were in a no-win situation. They could either object to almost every statement made by Appellees' counsel, or they could remain silent and allow Appellees' counsel to repeatedly inflame the jurors' passions, prey on their emotions and appeal to their sense of outrage. It is axiomatic that defense counsel, even after stipulating to causation and liability, had the right, if not the obligation, to question Mr. Farese's damages, which Appellants legitimately felt were inflated. Given a fair presentation of both sides, the jury would have been called upon to make a determination free from undue influence. That did not happen in this trial. Appellees' counsel did his clients no favor in the manner he excoriated the defense without justification.