**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| JAMES TEMPLE, ADMINISTRATOR FOR THE ESTATE OF ELMA B. TEMPLE, DECEASED, | : | No. 21 WAP 2019 |
| | : | |
| | : | Appeal from the Order of the Superior |
| | : | Court entered July 10, 2018, at No. 87 |
| Appellant | : | WDA 2017, affirming in part and |
| | : | reversing in part the Order of the |
| | : | Court of Common Pleas of Beaver |
| v. | : | County entered December 14, 2016, |
| | : | at No. 11726-2012 and remanding. |
| | : | |
| PROVIDENCE CARE CENTER, LLC D/B/A PROVIDENCE CARE CENTER, | : | ARGUED: October 15, 2019 |
| | : | |
| | : | |
| Appellee | : | |

**OPINION**

**JUSTICE WECHT**                    **DECIDED: JULY 21, 2020**

In this case, a panel of the Superior Court concluded that, even though Providence Care Center had waived its opportunity to ask for a mistrial, the trial court nonetheless possessed and invoked its inherent authority to grant a new trial *sua sponte* for the same reasons that Providence Care Center raised in its post-trial motions. In so ruling, the Superior Court affirmed the trial court's grant of a new trial.

There are instances in which a party detects, but fails to preserve, an error that could result in a mistrial. In today's decision, we again recognize that a trial court possesses the very limited and restrained authority to halt proceedings and compel them to begin anew based upon that unpreserved error. But in such a circumstance, a trial court may only use its *sua sponte* authority to grant a new trial where "exceedingly clear

error" results in "manifest injustice," of a constitutional or structural nature. *Ewing v. Tees*, 1 Binn. 450, 455-56 (Pa. 1808) (opinion of Tilghman, C.J.) However, that is not what occurred here, and the Superior Court's conclusion that it did must be reversed. Because Providence Care Center did not preserve its request for a mistrial and because the trial court did not grant, and could not have granted, a new trial *sua sponte* based upon the unpreserved request for a mistrial, we reverse the Superior Court's order and remand for further proceedings.

## I. Background

In 2008, Elma Betty Temple ("Elma"), who suffered from Alzheimer's disease, became a resident of Providence Care Center, a nursing home located in Beaver Falls, Pennsylvania. Providence Care Center, LLC ("Providence") owned and operated the facility, while Grane Healthcare Company ("Grane") provided management services. On November 28, 2011, Elma, who was 81 years old at the time, fell while walking on a ramp. She suffered a fracture in her right humerus, a fracture in her right pelvis, and a laceration to her right elbow. Providence apparently was not supervising Elma at the time; the only witness to the incident, a hospice chaplain, was not a designated caregiver.

On September 26, 2012, James Temple ("Temple"), Elma's son, filed a complaint on Elma's behalf[1] against Providence and Grane, alleging negligence and corporate negligence, and sought punitive damages. Temple alleged that Providence should have known that Elma required supervision, because of two previous falls in 2011. Temple further claimed that the facility was understaffed, and that Providence failed to provide needed safety measures.

---

[1] During the course of the litigation, Elma passed away. Temple is now the administrator of Elma's Estate.

In May 2016, the court of common pleas presided over an eight-day jury trial. During the trial, three issues arose that are pertinent for resolving the instant dispute: (1) the admission of evidence regarding alleged understaffing of the facility, (2) testimony pertaining to Providence's alleged "star rating,"[2] and (3) the propriety of Temple's closing argument, as detailed below. At the close of Temple's case, the trial court granted a motion for nonsuit as to Grane and dismissed Grane from the case. The trial court denied a motion for nonsuit as to Providence and denied a motion for a directed verdict on punitive damages.

In the bifurcated trial, the jury first considered whether Providence was negligent, the amount of compensatory damages to award, and whether Providence was reckless. The jury found that Providence was both negligent and reckless, and awarded $2,000,000 in compensatory damages. The second phase of the trial was focused upon punitive damages. After deliberations in this phase, the jury awarded $250,000 in punitive damages.

Following a flurry of post-trial motions from both Temple and Providence, the trial court granted motions for judgment *non obstante veredicto* ("JNOV") on punitive damages and a new trial on negligence and compensatory damages. The trial court, in part, granted the aforementioned motions because of the staffing, star rating, and closing argument issues, though, as detailed below, the trial court granted these motions despite the fact that Providence had not preserved its right to request a mistrial.

**A. The Staffing Issue**

During trial, Katherine McCombs, a former Providence employee, "testified that the facility was short-staffed at times and [that] she received grievances to this effect." Trial Court Opinion and Order on Defendant's Post-Trial Motions, 12/13/2016, at 10 ("Trial Ct.

---

[2]     *See infra* note 3.

Post-Trial Motions Op."). Temple did not present any expert testimony to the effect that Providence's staffing fell below industry standards or that the staffing levels caused or contributed to Elma's injuries.

After McCombs' testimony, Providence argued that the jury should not consider the staffing levels in determining whether Providence was negligent because "there [wa]s simply nothing on the face of [the] record that would allow a jury to conclude anything other than she was unsupervised at the time of the fall. That d[id] not lead to a conclusion . . . that the facility was in any way understaffed." Notes of Testimony ("N.T."), 5/19/2016, at 215. During discussion of this motion, the following exchanges between the trial court and Providence's attorney occurred:

| THE COURT: | So what, so what are you asking, that they not be permitted to argue understaffing or that understaffing led to her, led to her injury? |
| [PROVIDENCE'S ATTORNEY]: | Well, I think that their argument, Your Honor, is that one of the bases of our alleged negligence is, is understaffing this facility and/or punitive damages, and so yes, I am arguing that they have not adduced evidence -- |
| | * * * |
| THE COURT: | I think they can make an argument that there wasn't adequate staff to meet her needs. |
| | * * * |
| THE COURT: | I know there's been an objection about that, but certainly, you can put on your testimony about how much staff was there and argue that there was more than adequate staff. . . . Do you guys need a minute? |

| | |
|---|---|
| [PROVIDENCE'S ATTORNEY]: | I think that's all we have, Your Honor. |
| THE COURT: | Okay.  And so our testimony tomorrow will be your experts? |
| [PROVIDENCE'S ATTORNEY]: | We, we will have some testimony from our restorative nurse, our director of nursing -- |
| THE COURT: | Okay. |
| [PROVIDENCE'S ATTORNEY]: | -- and two experts. |

\*      \*      \*

| | |
|---|---|
| THE COURT: | All right. . . . |
| [PROVIDENCE'S ATTORNEY]: | Very good. |
| [PROVIDENCE'S ATTORNEY]: | Thank you, Your Honor. |
| THE COURT: | Anything else? |
| [PROVIDENCE'S ATTORNEY]: | So long as our position, we, we raised previously before we formally rest about Your Honor's ruling regarding admitting the entire record, as long as that's clear. |

*Id.* at 218-22.  At no point during this colloquy did Providence move for a mistrial because of McCombs' testimony.  Rather, as quoted above, Providence's attorneys proceeded to another issue.

**B. The Star Rating Issue**

During trial, Temple sought to introduce evidence about Providence's "star rating," a metric by which the Centers for Medicare & Medicaid Services ("CMS") assess nursing homes.[3]  The trial court expressly forbade Temple from asking about or discussing the

---

[3]      CMS "created the Five-Star Quality Rating System to help consumers, their families, and caregivers compare nursing homes more easily and to help identify areas about which you may want to ask questions."  Centers for Medicare & Medicaid Services,

star rating system with any witness in front of the jury without first calling an expert from CMS to explain the system. The trial court "repeatedly said 'No' or 'Nope' 12 times with respect to this issue." Trial Ct. Post-Trial Motions Op. at 25-26; *see also* N.T., 5/17/2016, at 101-02.

However, after Beth Lengle, Grane's Vice President for Nursing Services, mentioned the star rating system during her testimony, Temple's attorney asked, "Do you have a good understanding of the star rating?" N.T., 5/18/2016, at 197. Providence's attorney objected, and the parties and the trial court engaged in the following conversation, in the presence of the jury:

| | |
|---|---|
| [PROVIDENCE'S ATTORNEY]: | Your Honor, I think we've got a disconnect on two different things, the Department of Health numbers -- |
| [TEMPLE'S ATTORNEY]: | Your Honor, if he has a speaking objection, then -- |
| [PROVIDENCE'S ATTORNEY]: | No, you're, you're mixing the two, and I think she's articulating that, and you're trying to confuse the two. |
| [TEMPLE'S ATTORNEY]: | Well, he can, he has his opportunity to ask his own questions, Your Honor. |
| THE COURT: | All right. I, I'm going to sustain the objection as to the form of the question, and I will allow you to re-ask the question or, or maybe we just need some more foundation on what this 671[4] is. |

---

*Five-Star Quality Rating System*, Certification & Compliance (Dec. 4, 2019, 9:44 P.M.), https://www.cms.gov/medicare/provider-enrollment-and-certification/certificationandcomplianc/fsqrs. A CMS-run website "features a quality rating system that gives each nursing home a rating of between 1 and 5 stars. Nursing homes with 5 stars are considered to have much above average quality and nursing homes with 1 star are considered to have quality much below average." *Id.*

4　　"671" is a reference to a form from CMS, the CMS-671 Long Term Care Facility Application for Medicare and Medicaid, which includes information pertaining to staffing

| | |
|---|---|
| [PROVIDENCE'S ATTORNEY]: | That's, I think that's my objection, Your Honor. |
| [TEMPLE'S ATTORNEY]: | Do you have an understanding that based on the six, the five-star reports that there will be a rating for staffing from one star, two star, three star, four star, five star; right? |
| [LENGLE]: | Yes, but that is not the same thing as the daily staffing numbers. |
| [TEMPLE'S ATTORNEY]: | The, do you recall what the staffing, the star-rating was for Providence Care Center back in -- |
| [PROVIDENCE'S ATTORNEY]: | Objection, Your Honor. We've talked about this. |
| THE COURT: | Sustained. |
| [LENGLE]: | Do I answer? |
| THE COURT: | No. |
| [LENGLE]: | I'm sorry. Okay. Sorry. |

*Id.* at 199-200. At the time of the testimony, Providence's attorney did not make any other objection, nor did Providence move for a mistrial. After the objection, Temple's attorney immediately resumed questioning Lengle.

**C. The Closing Argument Issue**

As noted above, the trial court bifurcated the trial. First, the jury was charged with considering the issues of negligence, compensatory damages, and recklessness. Then, if the jury found that Providence was reckless, the jury would consider whether and what amount of punitive damages the circumstances warranted. In preparation for the first

---

numbers. *See* Centers for Medicare & Medicaid Services, *CMS 671*, CMS Forms List (Sept. 1, 2018), https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/CMS-Forms-Items/CMS006581.

phase of deliberations, the trial court instructed the parties not to reference punishment or the wealth of either defendant. The trial court did not "want the jury to be confused or misled in the compensatory phase that they may include some money in there for punishment." N.T., 5/23/2016, at 25; *see generally id.* at 15-28. Additionally, the trial court had instructed Temple not to refer to any manipulation of staffing numbers. *See* N.T., 5/17/2016, at 95-96.

During closing arguments, and contrary to the trial court's clear commands, Temple's attorney made multiple references that "directly contravened [the trial court's] instructions and were highly prejudicial to" Providence. Trial Ct. Post-Trial Motions Op., at 30. Temple's attorney suggested that the staffing numbers were manipulated, mentioned "exceptional profits," urged "hold[ing Grane] accountable," and asked the jury to stop "history [from] repeating itself." N.T., 5/23/2016, at 109-24; *see also* Trial Ct. Post-Trial Motions Op. at 33-34.

After the closing arguments, Providence's attorney objected to "several points" made by Temple's attorney, including requests to hold Providence accountable, references to Grane, and comments regarding exceptional profits. N.T., 5/23/2016, at 125-26. The trial court noted these objections and engaged in the following discussion with the attorneys out of earshot of the jury:

THE COURT: Okay. So I guess the question becomes how do we rectify that? Other than just give them the charge and note that that, especially when I get to the part about compensatory damages that it's solely to compensate them. It is not to send a message, but holding them accountable I think is fair. If there's negligence, then there should be accountability for that, so I think that's fair, but I do agree with holding, sending a message and that sort of thing may have crossed the line slightly, so I will try to correct that when I

|  |  |
|---|---|
|  | give my instructions on damages, and your objection is also noted.  I don't know how else I can address it. |
| [TEMPLE'S ATTORNEY]: | I mean there were no contemporaneous objections made I mean in the course of -- |
| THE COURT: | Well, we do that on purpose.  I don't know how many cases you've tried in Pennsylvania, but I've never had somebody object during, during closing. |

\*       \*       \*

|  |  |
|---|---|
| THE COURT: | But your objection's noted. |
| [PROVIDENCE'S ATTORNEY]: | Well, I mean -- |
| THE COURT: | Is there anything else you want me to say? |
| [PROVIDENCE'S ATTORNEY]: | Well, I think a cautionary instruction as to his indications that, that they are to send message is inappropriate. |
| THE COURT: | I agree. |
| [PROVIDENCE'S ATTORNEY]: | Thank you, Your Honor. |

*Id.* at 126-28.  Yet again, Providence never moved for a mistrial due to Temple's disregard of the trial court's instructions, instead implicitly agreeing that a cautionary instruction would be sufficient.  In charging the jury, the trial court gave such an instruction.  *See id.* at 141.

**D. Providence's Oral Motion for a New Trial on Negligence**

Providence did ask for a new trial on the negligence and compensatory damages verdicts, albeit never during the exchanges on the three issues noted above.  *After* the jury decided to award Temple $2,000,000 in compensatory damages, and a day *after* Temple's closing argument, Providence "move[d] to strike the jury award . . . because it

does clearly . . . include punitive damages and represents confusion both in the charging or, or the verdict slip . . . . Alternatively [Providence would] move for a mistrial on the same grounds." N.T., 5/24/2016, at 4-5.[5] The trial court denied this motion, but noted that Providence could raise the issue again in a post-trial motion. After denial of the motion, Providence's attorney argued that Temple's closing argument was "clearly improper, and . . . a curative instruction on those points has not obviously remedied the situation, and I think that that is grounds for mistrial." *Id.* at 11. Providence conceded that:

| | |
|---|---|
| [PROVIDENCE'S ATTORNEY]: | Again I don't know that that can rectify what -- |
| THE COURT: | What happened yesterday. I understand. I understand. |
| [PROVIDENCE'S ATTORNEY]: | -- happened yesterday and throughout the trial. |
| THE COURT: | I understand. |

*Id.* at 12.

### E. The Trial Court Opinions

After the jury announced its verdicts and awards, both Temple and Providence filed post-trial motions, which the trial court disposed of in two separate opinions. In an opinion dated December 13, 2016, the trial court responded to Providence's post-trial motions. First, the trial court granted Providence's motion for JNOV with regard to punitive damages, finding that Temple had presented no evidence that could show that

---

[5] After we heard oral argument in this case, Providence filed a post-submission communication with the Court highlighting this portion of the notes of testimony, wherein Providence asked for a mistrial after the initial verdict. *See* Appellee's Post-Submission Communication Pursuant to Pennsylvania Rule of Appellate Procedure 2501(a).

Providence's "conduct amounted to anything more than negligence." Trial Ct. Post-Trial Motions Op. at 4.

Second, in a lengthy analysis, the trial court granted Providence's motion for a new trial with regard to negligence and compensatory damages. The trial court provided five reasons for granting a new trial: (1) the compensatory damages award was "so contrary to the evidence as to shock one's sense of justice," *id.* at 10; (2) Temple did not support its understaffing claims with expert testimony, and the trial court "ha[d] no way to determine whether the jury found Providence to be negligent based on a lack of staffing or based on another allegation of negligence," *id.* at 14; (3) the trial court improperly instructed the jury on staffing and the possibility of Providence's reckless conduct, *id.* at 15;[6] (4) the trial court improperly submitted the issue of punitive damages to the jury, *id.* at 17;[7] and (5) the trial court admitted "improper prejudicial evidence," *id.* at 17-18.

With regard to the fifth reason, the trial court highlighted the erroneous admission of evidence regarding six different issues, including the staffing, star rating, and closing argument controversies noted above. Notably, the trial court did not make any determination as to whether Providence waived entitlement to a new trial based upon the star rating issue. And in response to Temple's claim that Providence had waived the

---

[6]     The trial court additionally found that it had improperly instructed the jury on corporate liability, but the court decided that this error was harmless. *See* Trial Ct. Post-Trial Motions Op. at 15-16.

[7]     The trial court's language with regard to this reason for granting a new trial was especially confusing. The trial court wrote that "[a] new trial is necessary because the question of punitive damages was improperly submitted to the jury." Trial Ct. Post-Trial Motions Op. at 17. The court then wrote that, "[f]or the reasons we believe a judgment n.o.v. is warranted on the issue of punitive damages, we also believe a new trial is warranted." *Id.* The best interpretation of this portion of the opinion is that the trial court was granting a new trial on *negligence and compensatory damages* because the court submitted the *punitive damages* question to the jury, as the trial court had earlier in the opinion granted JNOV on the punitive damages question.

ability to ask for a new trial due to the prejudicial closing argument, the court wrote that Providence "timely objected . . . at trial. . . . Thus, [the remedy of asking for a new trial was] not waived by" Providence. *Id.* at 36. The trial court concluded that "the cumulative effect of the errors in this trial . . . produced something other than a just and fair result. For that reason, a new trial [wa]s warranted." *Id.* at 37.[8]

After Temple filed a timely appeal to the Superior Court, the trial court issued an opinion in accordance with Pa.R.A.P. 1925(a). As to the decision to grant a new trial on negligence and compensatory damages, the trial court wrote that "[t]he Court adequately addressed all issues in [the Trial Ct. Post-Trial Motions Op.], which will serve as its 1925(a) opinion on these issues." Trial Court 1925(a) Opinion, 3/8/2017, at 2 ("Trial Ct. Rule 1925(a) Op."). However, the trial court also stated that the December 13, 2016 post-trial motions opinion "did not give an overarching reason for its decision. . . . [T]he Court note[d] that the main reason for ordering a new trial was not the substantial verdict, but the fact that the Court did not believe the trial was fair." *Id.* In contrast to the post-trial motions opinion, the trial court explained that "if this were a case of purely compensatory damages, [the trial court] likely would <u>not</u> have awarded a new trial. The main problem in this case was [Temple's] counsel's failure to follow the rules, and his co-mingling of arguments regarding compensatory and punitive damages, despite the court's admonition against this." *Id.* (emphasis in original). The court then described the same issues regarding the star rating and Temple's closing argument. Based upon these two issues, the trial court came "simply [to] believe the trial was not fair," and "when a trial judge believes that the trial was not fair, that judge is obliged to correct it." *Id.* at 3. Separate from this finding of unfairness, the trial court wrote that it "d[id] not believe the

---

8    The trial court additionally denied Providence's request for remittitur, as it found the proper remedy to be a new trial. *See* Trial Ct. Post-Trial Motions Op. at 37.

claim of inadequate staffing was properly supported by expert testimony." *Id.* at 4. Seemingly referring to all three issues—star rating, closing arguments, and staffing—the trial court felt "compelled to order a new trial on both liability and damages." *Id.* The trial court did not mention any of the other reasons[9] for granting new trial that it described in its December 13, 2016 post-trial motions opinion.[10]

### F. The Superior Court Opinion

In an unpublished memorandum, the Superior Court affirmed in part and reversed in part. The panel affirmed the trial court's decision to grant a new trial. The panel first noted that, "[b]ecause the trial court focuses on [the star rating and closing argument] incidents to demonstrate why it believed that the trial was unfair, [the panel] examine[d] each in turn to ascertain if they warrant a new trial." *Temple v. Providence Care Ctr., LLC*, 87 WDA 2017, 2018 WL 3358598, at *4 (Pa. Super. July 10, 2018).

First, on the star rating issue, the panel agreed with Temple that Providence had not preserved its claim. *See id.* at *6 (noting "Providence's late objection and failure to request a mistrial"). However, the panel explained that these failures "cannot waive the trial court's power to *sua sponte* order a new trial." *Id.*; *see also id.* ("[W]e disagree with [Temple] that Providence waived [the star rating issue] claim by not objecting immediately and asking for a mistrial."). In an extended footnote, the panel further explained that, "notwithstanding Providence's post-trial motions asking for a new trial, it is evident that the trial court felt compelled to grant a new trial independent of Providence's motions

---

[9]    The trial court apparently narrowed its focus to the star rating, closing arguments, and staffing issues on its own accord. In his Pa.R.A.P. 1925(b) statement, Temple wrote only that "[t]he trial court erred when it granted the post-trial motion of Providence . . . and ordered a new trial as to both liability and damages on the claim of negligence." Plaintiff's Statement of Errors Complained of on Appeal, 1/27/2017, at 2.

[10]    Additionally, in its Rule 1925(a) Opinion, the trial court: (1) defended its decision to grant nonsuit for Grane; (2) defended its rulings on other evidentiary issues; and (3) agreed that delay damages would be proper upon remand.

requesting such relief." *Id.* at *6 n.7. For proof that the trial court had used its *sua sponte* authority, the panel cited the trial court's language that, "'when a trial judge believes that the trial was not fair, that judge is **obliged** to correct it.'" *Id.* (quoting Trial Ct. Rule 1925(a) Op. at 3) (emphasis in Superior Court memorandum). Additionally, the panel found that this *sua sponte* power applied in both criminal and civil trials. *See id.* Finally, the panel distinguished our waiver jurisprudence announced in *Tagnani v. Lew*, 426 A.2d 595 (Pa. 1981), writing that *Tagnani* "involved only one error, and not the multiple errors the trial court points to in the case *sub judice*," and that this Court's decisions confirming the *sua sponte* power "post-date" *Tagnani. Temple*, 2018 WL 3358598, at *6 n.7.

Next, the panel agreed with Temple that "Providence did not request a mistrial immediately following [Temple's] closing argument." *Id.* at *7. However, the panel once again found "that this omission d[id] not preclude the trial court from granting a new trial *sua sponte*." *Id.* The Superior Court only mentioned the staffing issue in a footnote,[11] but concluded that "the trial court had a basis to believe that the trial was unfair, given the cumulative effect of [Temple's] improper conduct, along with other errors that prejudiced Providence." *Id.* at *8. The Superior Court did not analyze those "other issues" in terms of whether the trial court was using its *sua sponte* authority or whether preservation and waiver rules applied. In its final disposition, the Superior Court remanded the case for a new trial.[12]

---

[11]     The panel wrote that McCombs' testimony "was insufficient to establish . . . understaffing," but the panel did not analyze the staffing claim in terms of waiver of a motion for a mistrial by Providence or the trial court's ability to grant a new trial *sua sponte*. *Temple*, 2018 WL 3358598, at *8 n.8.

[12]     Not pertinent to this appeal, the panel made two additional rulings. First, the panel sustained the trial court's decision to grant JNOV on punitive damages. Second, the panel reversed the trial court's decision to grant the motion for a nonsuit as to Grane and ordered that Grane be included in a new trial. *See Temple*, 2018 WL 3358598, at *18.

We granted Temple's petition for allowance of appeal in order to decide the following question:

Did the Superior Court disregard decades of controlling Supreme Court precedent by affirming the grant of a new trial based upon errors that were not preserved properly at the time of trial?

*Temple v. Providence Care Ctr., LLC*, 205 A.3d 312 (Pa. 2019) (*per curiam*).

## II. Waiver and Preservation

We first must evaluate whether Providence preserved its motion for mistrial by "mak[ing] a timely, specific objection at trial *and* rais[ing] the issue on post-trial motions." *Reilly by Reilly v. Se. Pa. Transp. Auth.*, 489 A.2d 1291, 1300 (Pa. 1985) (emphasis in original). Because no party claims that Providence failed to ask for a mistrial in its post-trial motions, we focus our analysis upon whether Providence requested such a remedy during the trial itself.

"The applicability of waiver principles presents a question of law, over which our standard of review is *de novo*." *Stapas v. Giant Eagle, Inc.*, 198 A.3d 1033, 1037 (Pa. 2018). Additionally, for "[t]he application of the waiver doctrine[,] . . . our scope of review is plenary." *Straub v. Cherne Indus.*, 880 A.2d 561, 566 n.7 (Pa. 2005).

Beginning in *Dilliplaine v. Lehigh Valley Trust Co.*, 322 A.2d 114 (Pa. 1974), we recognized that the now-discarded "basic and fundamental error doctrine" had "never developed into a principled test, but . . . remained essentially a vehicle for reversal when the predilections of a majority of an appellate court [we]re offended." *Id.* at 116. We replaced that doctrine with a strict waiver principle, requiring that "a specific exception must be taken" for an appellate court to review an alleged error at trial. *Id.* at 117. We pointed to a number of reasons for requiring that a specific objection be made, including giving trial courts the first crack at correcting the error, the inefficiency in having appellate courts review errors where there was no trial court ruling, and the need to focus appellate

courts upon issues actually preserved. *See id.* at 116-17. Another key consideration was the higher level of training and education for lawyers in the modern era. We wrote: "Perhaps at an earlier stage of our jurisprudential development this practice could be justified. Today, however, there is no excuse for and appellate courts should not encourage less than alert professional representation at trial." *Id.* at 116. Previously, an "unprepared trial lawyer [could] look[] to the appellate court to compensate for his trial omissions." *Id.* at 117. In the modern era, in line with the inherent nature of our adversarial system, we recognized that the parties themselves should be held responsible for their own mistakes (or purposeful strategies).[13]

While *Dilliplaine* instituted strict waiver as a matter of common law, we later amended our Rules of Civil Procedure to codify this principle. *See* Pa.R.C.P. 227.1(b). With an exception not relevant to the case *sub judice*, Rule 227.1(b) forbids a trial court from granting post-trial relief unless:

> (1) if then available, [the grounds] were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and

> (2) are specified in the [post-trial] motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

*Id.*; *see also id.* cmt. ("Subdivision (b)(1) incorporates into the rule the principle of *Dilliplaine* . . . that basic and fundamental error is not a ground for a new trial in the absence of a timely objection at trial."). The Rule specifically notes that "[i]f no objection is made, error which could have been corrected . . . during trial by timely objection may

---

[13] In a concurring opinion, Justice Manderino noted that, when a lawyer fails to recognize an error and a party is prejudiced, that party could bring claims either for ineffective assistance of counsel, in the criminal context, or malpractice, in the civil context. *See Dilliplaine*, 322 A.2d at 117–18 (Manderino, J., concurring). These remedies obviously continue to exist today.

not constitute a ground for post-trial relief." *Id.* note; *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Since *Dilliplaine* and codification of strict preservation and waiver principles in Rule 227.1(b), we have expanded upon the meaning of the strict waiver principle. For example, in *Tagnani*, the plaintiff made an objection to a prejudicial question. The trial court "promptly sustained" the objection, "and the question was not answered. No further relief was sought . . . during trial." 426 A.2d at 595. However, after the jury returned a verdict for the defendant, the plaintiff submitted a post-trial motion asking for a new trial because of the prejudicial question. The trial court granted the request. Upon appeal to this Court, we considered "the power of a court to grant a new trial for alleged harm neither designated as such nor for which remedy was sought during trial." *Id.* Applying our rule in *Dilliplaine*, we concluded that "failure to pursue further relief after the [trial] court sustained the objection justified the [trial] court in concluding that no further action with reference to that complaint was necessary" at the time the objection was made. *Id.* at 597. Thus, the party had waived its right to a new trial because it did not specifically ask for such a remedy at the time of the prejudicial question. We were careful to note specifically that there is "no legitimate . . . distinction . . . between the situation where the claim is not timely raised and *where the remedy sought was not timely pursued.*" *Id.* at 597 (emphasis added).

We further elucidated the strict waiver principle in *McMillen v. 84 Lumber, Inc.*, 649 A.2d 932 (Pa. 1994). In that case, McMillen filed a pre-trial motion *in limine* asking that 84 Lumber "be precluded from introducing any evidence to the effect that the warning labels . . . comported with industry standards, [84 Lumber's] own rules, or governmental regulations." *Id.* at 933. The trial court granted the motion and later "reaffirmed [the] pre-trial order barring such testimony." *Id.* During the trial, the trial court "repeated and

clarified [the] order specifying that [84 Lumber's] counsel was not permitted, either directly or indirectly," to make any arguments or ask any questions about the warning labels. *Id.* However, "[i]n direct defiance of the trial court's explicit instructions . . . and after a warning from the bench to cease and desist," 84 Lumber's attorney asked such a question. *Id.* McMillen, however, "did not ask for a mistrial." *Id.* And yet, "[i]n post-trial motions, [McMillen] asked for a new trial based on [84 Lumber's] blatant violations of the trial judge's ruling." *Id.* at 934. The trial court, applying the waiver principle from *Tagnani*, found that McMillen had waived the right to ask for a new trial. The Superior Court reversed, opining that waiver was excused based upon a narrow exception we recognized in *Reilly*. *See Reilly*, 489 A.2d at 1301 ("The failure to preserve an issue on appeal will be excused only when a strong public interest outweighs the need to protect the judicial system from improperly preserved issues.").

Upon appeal, we, in turn, reversed the Superior Court. We agreed that the question asked by 84 Lumber was highly prejudicial and that McMillen was "surely entitled" to a mistrial. *McMillen*, 649 A.2d at 933. Nonetheless, we found that McMillen had waived the right to ask for a mistrial. McMillen's "counsel apparently gambled that they could still win before the jury already empaneled as opposed to incurring the expenditure of time and money that would necessarily occur if a mistrial were granted and a new trial ordered. They lost." *Id.* And with regard to the narrow exception in *Reilly*, we constricted it even further. "Aside from capital cases . . . where a human life is at stake, no fact situations have been presented to us, and none readily comes to mind, where this narrow public interest exception would justify departure from the waiver rule." *Id.* at 934.[14] Rather, the error and prejudice caused by 84 Lumber made it a "fairly routine

---

[14]    Since *McMillen*, we have applied the strict waiver principle to capital cases as well. *See Commonwealth v. Freeman*, 827 A.2d 385, 393-403 (Pa. 2003).

civil case." *Id.* While "[t]he [waiver] rule may be harsh at times, . . . litigation must eventually come to an end." *Id.*

Turning to the case *sub judice*, Providence claims that it asked for a mistrial on the closing argument issue. *See* Brief of Appellee at 5-7. We note that, in discussing the understaffing, *id.* at 8-9, and star rating, *id.* at 11-12, issues, Providence does not point to any specific instance where it timely asked for a new trial. A straightforward application of Rule 227.1(b) and our precedent mandates concluding that Providence waived its ability to ask for a mistrial because it did not "make timely and specific objections during trial." *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1124 (Pa. 2000).

First, as to staffing, the trial court inquired whether Providence was "asking, that [Temple] not be permitted to argue understaffing." N.T. 5/19/2016, at 218. Providence responded that Temple had "not adduced evidence" to show understaffing. *Id.* at 219. Subsequently, when the trial court offered that Providence could "put on your testimony about how much staff was there," *id.* at 220, Providence responded by noting that it would provide two experts, *see id.* at 220-21. When the trial court asked Providence, "Anything else?," Providence did not ask for a mistrial but instead moved on to another topic. *See id.* at 221-22. Just as in *Tagnani*, after "[n]o further relief was sought . . . during trial" by Providence, *Tagnani*, 426 A.2d at 595, Providence waived its right to ask for a mistrial on the staffing issue. *See also Jones v. Ott*, 191 A.3d 782, 792 (Pa. 2018) ("When a trial judge directly asks for any objections, counsel must directly state them, explicitly or by reference to prior recorded objections, on pain of waiver.").

Second, after Temple's attorney asked a witness about the nursing home's star rating, Providence interposed an objection, which the trial court sustained. *See* N.T., 5/18/2016, at 199-200. Providence, "fail[ing] to pursue further relief after the [trial] court sustained the objection," allowed "the [trial] court [to] conclude[] that no further action with

reference to that complaint was necessary," *Tagnani*, 426 A.2d at 597, waiving Providence's right to ask for a mistrial on this topic.

Third, Temple clearly violated the trial court's instructions with regard to closing arguments. *See* Trial Ct. Post-Trial Motions Op. at 33-34. When the trial court specifically asked Providence's attorneys how Providence wanted to ameliorate the error, Providence requested "a cautionary instruction," to which the trial court agreed. N.T., 5/23/2016, at 128. Providence, at the time of the objection, did not request a mistrial, as Providence implicitly concedes. *See* Brief of Appellee at 15 n.1 (noting that Providence's "objections were timely and appropriate" but failing to cite any request for a mistrial at the time of the objections). Even if Providence was "surely entitled" to a mistrial, like the plaintiff in *McMillen*, 649 A.2d at 933, Providence waived its ability to ask for a new trial "where the remedy sought was not timely pursued," *Tagnani*, 426 A.2d at 597.

Finally, Providence claims that a colloquy with the trial court on May 24, 2016 shows that Providence made a timely motion for a new trial during the trial itself, at least with regard to Temple's improper closing argument. *See* Brief of Appellee at 5-7; *see also* Appellee's Post-Submission Communication Pursuant to Pennsylvania Rule of Appellate Procedure 2501(a). At that point, following the jury's compensatory damage award, Providence moved for a mistrial based upon a claim that the jury awarded both compensatory and punitive damages during the first phase of deliberations. After that motion was denied, Providence again brought up Temple's prejudicial closing argument. But this time, Providence made a new point, that the "curative instruction on those points has not obviously remedied the situation." N.T., 5/24/2016, at 11. Providence stated that it did not know what could "rectify" the prejudicial closing argument. *Id.* at 12. A motion for mistrial immediately following Temple's closing argument, even if denied at the time by the trial court, could have rectified the error. Arguing for a mistrial a day *after* the

alleged error, in the context of a motion for a mistrial based upon other grounds, is not a "timely, specific objection," *Reilly*, 489 A.2d at 1296, that allows for preservation.

In each instance outlined above, Providence's attorneys made a strategic choice to continue the trial, rather than ask for a mistrial. In remarkably similar fashion to the attorneys in *McMillen*, Providence's "counsel apparently gambled that they could still win before the jury already empaneled as opposed to incurring the expenditure of time and money that would necessarily occur if a mistrial were granted and a new trial ordered. They lost." *McMillen*, 649 A.2d at 933. Having lost, Providence may have been "inspired after trial and an adverse verdict by the thought that an appellate court may seize upon a previously unclaimed error and afford relief on a ground not called to the trial court's attention." *Dilliplaine*, 322 A.2d at 116. Such an *ex post* inspiration will not allow a trial court to bypass our waiver jurisprudence. Thus, Providence did not preserve a request for a mistrial at any point during the trial itself, as the Superior Court rightly acknowledged. *See Temple*, 2018 WL 3358598, at *6 (noting "Providence's late objection and failure to request a mistrial" on the star rating issue); *id.* at *7 (writing that "Providence did not request a mistrial immediately following [Temple's] closing argument").[15]

### III. *Sua Sponte* Authority to Grant a New Trial

Even though the Superior Court reached the same conclusion that Providence did not preserve its request for a mistrial, that court nonetheless opined that "it is evident that the trial court felt compelled to grant a new trial independent of Providence's motions requesting such relief" by using its *sua sponte* authority to order a new trial. *Providence*,

---

[15] To the extent that the Superior Court distinguished *Tagnani* because *Tagnani* "involved only one error, and not the multiple errors the trial court points to in the case *sub judice*," *Temple*, 2018 WL 3358598, at *6 n.7, that distinction was error and has no basis in our jurisprudence. The "heavy consequence of waiver," *Jones*, 191 A.3d at 787 (quotation marks and citation omitted), applies whether trial counsel strategically (or inadvertently) failed to request a mistrial after a single prejudicial error or instead after multiple prejudicial errors.

2018 WL 3358598, at *6 n.7; *see also id.* at *7 (declaring "that this omission d[id] not preclude the trial court from granting a new trial *sua sponte*"). Thus, we must determine whether the trial court did grant, or even could have granted, a new trial on the strength of its *sua sponte* authority.

Whether the trial court actually used its *sua sponte* authority in the first place is a question of law, as to which our standard of review is *de novo*. However, if the trial court did grant a new trial *sua sponte*, then "it is well-established law" that an appellate court applies an abuse of discretion standard, as "[t]rial courts have broad discretion" in deciding whether to grant a new trial. *Harman*, 756 A.2d at 1121-22. In addition to legal error, an abuse of discretion occurs "where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Norton*, 201 A.3d 112, 120 (Pa. 2019) (quotation marks omitted).

Our scope of review with regard to a trial court's decision to grant a new trial is more nuanced. "Where the trial court articulates a single mistake (or a finite set of mistakes), the appellate court's review is limited in scope to the stated reason." *Morrison v. Commonwealth, Dep't of Pub. Welfare, Office of Mental Health*, 646 A.2d 565, 571 (Pa. 1994). Conversely, "where the trial court leaves open the possibility that there were reasons to grant or deny a new trial other than those it expressly offered, or the trial court justifies its decision on the 'interests of justice,' an appellate court must apply a broad scope of review and affirm if it can glean any valid reason from the record." *Harman*, 756 A.2d at 1123-24 (citing *Morrison*, 646 A.2d at 570).

The Superior Court, interpreting the trial court's Rule 1925(a) Opinion to mean that the star rating and closing argument issues, possibly with assistance from the staffing controversy, were dispositive, only "examine[d] each [of those issues] to ascertain if they warrant a new trial." *Temple*, 2018 WL 3358598, at *4. The Superior Court did not

provide any analysis outside of these three issues, and only mentioned the existence of the other disputes from the December 13, 2016 post-trial motions opinion in a single sentence. *See id.* at *8 ("[W]e determine that the trial court had a basis to believe that the trial was unfair, given the cumulative effect of [Temple's] improper conduct, along with other errors that prejudiced Providence."). Thus, the Superior Court implicitly found that "[a] relatively narrow scope of review applie[d]" when it "only examine[d] the stated reasons" from the Rule 1925(a) Opinion. *Coker v. S.M. Flickinger Co., Inc.*, 625 A.2d 1181, 1185 (Pa. 1993).

Accordingly, we "restrict our review to only those issues properly raised before, and addressed by," the court below. *Foster v. Mut. Fire, Marine and Inland Ins. Co.*, 614 A.2d 1086, 1093 n.3 (Pa. 1992). Thus, we review only whether the Superior Court erred in determining that the trial court used, or could have used, its *sua sponte* authority to grant a new trial because of the staffing, star rating, and closing argument issues.

We have long recognized that trial courts "are not prevented . . . from granting *of themselves* a new trial, if from a view of the evidence they see reason for it." *Ewing*, 1 Binn. at 457 (opinion of Brackenridge, J.) (emphasis in original); *see also Getz v. Balliet*, 246 A.2d 108, 110 (Pa. 1968) ("It has long been established that if sufficient cause exists, a court may grant a new trial *sua sponte*. This power may be exercised even in the absence of a motion for a new trial by any party involved.") (citations omitted).

More recently, in *Commonwealth v. Powell*, 590 A.2d 1240 (Pa. 1991), we explained that a trial court may use this *sua sponte* authority only when the "interest of justice" requires it. *Id.* at 1242. After the trial court determined that the court itself had made multiple errors during a bench trial, that same court "determined that a new trial was warranted 'in the interest of justice.'" *Id.* at 1241. Upon appeal, we found that "[t]he rationale 'in the interest of justice,' employed to rectify errors which would otherwise result

in unfairness, is deeply rooted in both federal jurisprudence and the common law of Pennsylvania." *Id.* at 1242. "Where it will result in the attainment of justice, a trial court may grant a new trial without the initiation of the defendant." *Id.* at 1243. We similarly have affirmed that this power exists within trial courts for civil trials. *See Armbruster v. Horowitz*, 813 A.2d 698, 704 n.6 (Pa. 2002) ("[A] trial judge has the power to grant a new trial *sua sponte* if he determines that the interests of justice so require."); *cf. Catalano v. Bujak*, 642 A.2d 448, 450 (Pa. 1994) (assuming that such a power exists by opining that "[t]he real question . . . is not whether the court had the power to award a new trial *sua sponte*, but whether the grant of a new trial on both liability and damages violated the law applicable to such requests").[16]

Make no mistake, the "interest of justice" standard remains a very high threshold, the invocation of which should occur only in rare circumstances. In *Powell*, for example, the trial court invoked its authority only after the court itself, "albeit unintentionally, coerced the [defendant] to waive his fundamental right to a jury trial and forced him to proceed with counsel who was admittedly ill prepared to present an effective or competent defense." *Powell*, 590 A.2d at 1243. We found that these serious (and prejudicial) errors, which involved the defendant's constitutional rights to representation and a jury trial, supported the trial court's use of its discretion in granting a new trial *sua sponte*. *See id.* at 1244; *cf. Clewell v. Plummer*, 131 A.2d 375, 378 (Pa. 1957) ("[I]t is [the trial court's] duty[] to grant a new trial when it believes the verdict . . . resulted in a miscarriage of justice.").

---

[16] Our trial courts retain this power even as trial courts in other jurisdictions, either through judicial rulings, *see, e.g.*, *State v. Dicapua*, 680 S.E.2d 292, 294 (S.C. 2009), or rules of procedure, *see, e.g.*, *People v. McEwan*, 543 N.W.2d 367, 369 (Mich. 1995), have been stripped of this authority.

As the Concurring and Dissenting Opinion aptly notes, the "interest of justice" standard has deep roots in our common law jurisprudence. *See* Conc. and Diss. Op. at 3-6. For errors recognized independently by the trial court, without any party calling attention to those errors, the "interest of justice" standard remains the threshold by which a trial court must determine whether it can grant a new trial *sua sponte*. In *Powell*, for example, the trial court recognized its own errors and granted a new trial *sua sponte* without the defendant moving for a new trial based upon the errors noted above. *See Powell*, 590 A.2d at 1242 n.4. Today's decision does not disturb or abrogate our ruling in *Powell*, nor does today's decision eliminate the "interest of justice" standard.

But in an age in which our system relies upon "alert professional representation at trial," *Dilliplaine*, 322 A.2d at 116, when a party *recognizes* an error, but *fails to preserve* that error, the bar for a trial court to grant a new trial *sua sponte* must be even higher than the already substantial hurdle of the "interest of justice." In such a situation, a trial court may exercise its *sua sponte* authority only in truly exceptional circumstances. A trial court should make such a ruling only where "exceedingly clear error" results in "manifest injustice." *Ewing*, 1 Binn. at 455-56 (opinion of Tilghman, C.J.). That "exceedingly clear error" should be of a constitutional or structural nature, and "manifest injustice" must be of such a magnitude as to amount to a severe deprivation of a party's liberty interest. Although these requirements are more difficult to prove than the "interest of justice" standard, we reject the notion that today's decision will result in the "virtual elimination of the *sua sponte* power." Conc. and Diss. Op. at 7. If a trial court determines that the above-noted conditions are met, then that court can still declare a new trial *sua sponte* based upon that recognized, but unpreserved, error. Additionally, while we do not restrict invocation of this authority to either criminal or civil cases, the point is well taken that such

prejudice would seem more likely to occur in the criminal context (though, even in such situations, would be exceedingly rare).[17]

Applying these principles to the instant case, we first find that the trial court did not invoke its *sua sponte* authority, despite the assertions of the Superior Court and the Concurring and Dissenting Opinion to the contrary. Neither in the December 13, 2016 Post-Trial Motions Opinion nor in the Rule 1925(a) Opinion did the trial court explicitly invoke that authority. Nor did the trial court ever justify its decision to grant a new trial in the "interest of justice," a phrase, as outlined above, that our Commonwealth's courts have consistently used when discussing this *sua sponte* authority. Just as importantly, the trial court ordered a new trial only in the context of responding to Providence's post-trial motions. The trial court subsequently issued its Rule 1925(a) Opinion only in response to Temple's appeal of the trial court's adjudication of Providence's post-trial motions. The trial court did not independently raise any of the prejudicial errors from trial, either during trial or in publishing a separate opinion after trial.

---

[17]     Although our Commonwealth's courts have applied this doctrine to capital cases in the past, *see Commonwealth v. McKenna*, 383 A.2d 174 (Pa. 1978), our jurisprudence does not demand circumscription to any particular type of case, capital or otherwise. To restrict this *sua sponte* authority only to a specific category of cases would be to unnecessarily constrain our trial courts in future cases, the circumstances of which we cannot predict. Trial courts, not appellate courts, are intimately familiar with the circumstances of each trial. "It is the trial judge's review of the conditions and activity surrounding the trial which leaves him or her in the best position to make determinations regarding the fairness of the process and its outcome," including the type of error and its corresponding prejudice to a party. *Powell*, 590 A.2d at 1243. Thus, we agree with the Concurring and Dissenting Opinion that we should grant "great deference" to our trial courts. Conc. and Diss. Op. at 6. However, we deny that the standard that we announce today, which is restricted to situations in which a party recognizes, but fails to preserve, an error, "is in tension" with that deference. *Id.* Trial courts, which manage and observe the proceedings before them, still retain the ability to declare a new trial *sua sponte* based upon a recognized, but unpreserved, error. They simply can do so only based upon a finding of "exceedingly clear error" that results in "manifest injustice." *Ewing*, 1 Binn. at 455-56 (opinion of Tilghman, C.J.).

The trial court wrote that "when a judge believes that the trial was not fair, that judge is obliged to correct it," Trial Ct. Rule 1925(a) Op. at 3, which the Superior Court opined was proof of invocation of the *sua sponte* authority, *see Temple*, 2018 WL 3358598, at *6 n.7. However, again, the trial court used this language in the context of an opinion stemming from the trial court's response to Providence's post-trial motions. Thus, there is no indication that the trial court intended to grant a new trial *sua sponte*.[18]

Second, the trial court itself recognized that the prejudice to Providence did not arise to the extraordinarily high threshold noted above. The trial court wrote that the "effect of the errors in this trial . . . produced something other than a just and fair result." Trial Ct. Post-Trial Motions Op. at 37. Later, the trial court concluded that it came "simply [to] believe the trial was not fair." Trial Ct. Rule 1925(a) Op. at 3. "[S]omething other than a just and fair result" and "not fair" are not analogous to the "manifest injustice," *Ewing*, 1 Binn. at 455 (opinion of Tilghman, C.J.), involving a constitutional or structural error, that is required for ordering a new trial on a recognized, but unpreserved, issue.

Third, even if the trial court did believe that the prejudice arose to the level required to grant a new trial *sua sponte* upon a recognized, but unpreserved, issue, as the Superior Court opined, *see Temple*, 2018 WL 3358598, at *6 n.7, such a grant of a new trial was an abuse of discretion. Temple's failure to follow the trial court's instructions on the

---

[18] When a trial court does grant a new trial on a recognized, but unpreserved, issue, confusion could arise as to whether the trial court either: (1) erred by granting a new trial based upon a party's unpreserved post-trial motion; or (2) used its *sua sponte* authority to grant a new trial on the recognized, but unpreserved issue. In order to give the parties and appellate courts notice, the trial court should state plainly and clearly if there was a *sua sponte* invocation. There is no talismanic phrase or precise set of words a trial court must use, *cf.* Conc. and Diss. Op. at 9 ("Critically, we rarely, if ever, require 'magic words' to be used in legal discourse."), but such a plain statement by the trial court will conserve judicial resources at the appellate level. Upon appeal, the appellate court will then be able to focus its analysis upon whether the trial court abused its discretion in granting a new trial *sua sponte*, rather than scrutinizing issues of preservation and waiver.

staffing, star rating, and closing arguments issues undoubtedly prejudiced Providence, but Providence does not claim that Temple's inability to abide by the trial court's instructions deprived Providence of any fundamental right that would have been constitutional or structural error. And a review of the record indicates that Providence did not experience a severe deprivation of liberty.

It is rarely the case that a trial is perfect, but it even is rarer that a trial court can invoke its *sua sponte* authority on a recognized, but unpreserved issue. Because each trial is unique, we need not (and could not) draw the exact line that must be crossed to result in an error so egregious that a trial court can invoke its *sua sponte* authority on an unpreserved issue. But this is not a close case. If the Superior Court was correct in its reading of the trial court opinion, a finding that sufficient conditions existed for a *sua sponte* grant of a new trial on Providence's unpreserved errors would have been "manifestly unreasonable," and, thus, an abuse of discretion. *Norton*, 201 A.3d at 120 (quotation marks omitted).

The trial court did not invoke, and could not have invoked, its *sua sponte* authority to declare a new trial. The Superior Court erred in ruling otherwise.[19] Rather, the trial court granted a new trial based upon Providence's unpreserved motions for a mistrial, which was legal error, as recognized by the Superior Court.

---

[19] The Superior Court seemingly has lowered the threshold for which a trial court may grant a new trial *sua sponte* on a recognized, but unpreserved, issue. *See Scott v. Lower Bucks Hosp.*, 2016 WL 5210668, at *3 (Pa. Super. July 21, 2016) (applying a "sufficient cause" standard to a trial court's ability to grant a new trial *sua sponte* on a waived issue and opining that "[b]ecause the trial court has the inherent authority to order a new trial, a party's actions cannot waive the trial court's exercise of that power"); *Commonwealth v. Dorm*, 971 A.2d 1284, 1288-89 (Pa. Super. 2009) (utilizing the "interest of justice" standard to determine whether the trial court could grant a new trial *sua sponte* on a recognized, but unpreserved, issue). We reiterate that a trial court may order a new trial *sua sponte* based upon a recognized, but unpreserved, issue only in the very rarest of circumstances, namely under the conditions outlined above.

The trial court, responding to Providence's arguments that included "everything but the kitchen sink," Trial Ct. Post-Trial Motions Op. at 8, gave a multitude of reasons in its December 13, 2016 Post-Trial Motions Opinion and Rule 1925(a) Opinion for granting a new trial. The Superior Court focused only upon the three issues outlined in this opinion because the trial court itself directed the focus to those three issues in the Rule 1925(a) Opinion. The Superior Court, though, failed to take into account the trial court's statement that the trial court "adequately addressed all issues" in the December 13, 2016 Post-Trial Motions Opinion, "which . . . serve[d] as its 1925(a) opinion on these issues." Trial Ct. Rule 1925(a) Op. at 2. While the Superior Court noted that its affirmance was based upon "the cumulative effect of [Temple's] improper conduct, along with other errors that prejudiced Providence," *Temple*, 2018 WL 3358598, at *8, it did not analyze any of the other reasons for the trial court's grant of a new trial.

The "salutary purpose" of a Rule 1925(a) opinion is "to provide a sufficient foundation for ensuing appellate review." *Commonwealth v. Hairston*, 84 A.3d 657, 679 (Pa. 2014) (Saylor, J., concurring); *see also Commonwealth v. Pate*, 617 A.2d 754, 758-59 (Pa. Super. 1992) ("The purpose of the [Rule 1925(a) opinion] is two-fold. First, it gives the appellate court a reasoned basis for the trial court's disposition of the challenged orders. Second, it requires the judge to thoroughly consider his decision regarding the post-trial motions, in order to correct any problems that occurred at the trial level."). A trial court can use a Rule 1925(a) opinion expressly to amend or even supersede its rationale from an earlier opinion. *See* Trial Ct. Rule 1925(a) Op. at 2 ("Although we stated in our [Post-Trial Motions] opinion that the verdict shocked the conscience of the Court, if this were a case of purely compensatory damages, we likely would not have awarded a new trial.") (emphasis in original). A Rule 1925(a) opinion, however, does not erase from existence the trial court's prior pronouncements on a topic when the Rule 1925(a) opinion

does not give such direction. The continued relevance of an earlier opinion is especially salient when the trial court specifically has incorporated that prior opinion into the Rule 1925(a) opinion, as the trial court did here.

We agree with Temple that the trial court's other reasons for granting a new trial "are not properly before the Court." Appellant's Reply Brief at 12. Accordingly, on remand, the Superior Court shall consider the other bases for the trial court's grant of a new trial.[20] In doing so, the Superior Court must again consider any possible waiver by either party, including in failing to preserve an issue at trial or in failing to note an adverse party's lack of preservation upon appeal. Therefore, we reverse the Superior Court and remand for further proceedings consistent with this opinion.

Chief Justice Saylor and Justices Donohue, Dougherty and Mundy join the opinion.

Justice Todd files a concurring and dissenting opinion in which Justice Baer joins.

---

[20] *Cf. Tagnani*, 426 A.2d at 597 ("Having concluded the court was in error in granting the motion for a new trial for the reason assigned, their order must be reversed. Since other reasons were offered in support of the motion for a new trial and not passed upon by the court *en banc*, the matter is remanded for the purpose of the disposition of these remaining questions.").